Frederick **BEACH**, and Vincent Di Rubbio, Plaintiffs,

v.

**KDI CORPORATION et al., Defendants.**

Civ. A. No. 4023.

United States District Court,
D. Delaware.

Dec. 28, 1971.

Peter J. Walsh and Converse Murdoch, Wilmington, Del., for plaintiffs.

E. N. Carpenter, II, Richard J. Abrams and William E. Wiggin, Wilmington, Del., for defendants.

## OPINION

STEEL, District Judge:

The amended complaint contains six counts. It alleges as to all counts that plaintiffs, Beach and DiRubbio, were the organizers in 1954 of Ordnance Products, Inc. (OPI), that until May 20, 1969 each owned 50 per cent of its stock, and were directors, and officers thereof, Beach being the chief executive officer. It further alleges that on May 20, 1969 plaintiffs entered into a Reorganization Agreement with KDI under which plaintiffs exchanged all of their OPI stock for a minority interest in the stock of KDI, plus other benefits including employment contracts with OPI under which Beach was to continue as president and DiRubbio as secretary-treasurer of OPI for a period of two years.[1] It further charges that KDI and its officers and directors, the original defendants, in entering into the Reorganization Agreement violated the Securities Act of 1933 and the Securities Exchange Act of 1934 and regulations thereunder. Because of this, plaintiffs have prayed that the transfer to KDI of their OPI stock be rescinded and the stock returned to them, plus damages.

The supplemental complaint adds Count VII which alleges events which occurred after the filing of the amended complaint. It alleges, among other things, that after the action was begun

---

1. During this time a "earn out" provision of the Reorganization Agreement was in effect which bore upon the right of plaintiffs to receive additional shares of stock of KDI.

and while plaintiffs were claiming from defendants other benefits alleged to be due them under the Reorganization Agreement, defendants formulated a scheme to compel plaintiffs to withdraw the action and their claims and that in furtherance of that scheme on May 21, 1971, summarily "fired" plaintiffs as officers and directors of OPI. It also alleges that by reason of the termination of the plaintiffs' employment they became entitled to receive their vested interest on May 21, 1971 in a Profit Sharing Fund of OPI which the Wilmington Trust Company, agent for the fund, refused to pay them due to directions given to it by OPI and by Eggert, the trustee of the fund. This, too, is alleged to have been a part of the scheme of defendants to deprive plaintiffs of the financial means to support the present litigation. Count VII alleges that unless the defendants are enjoined from continuing the courses of conduct described plaintiffs will suffer further and irreparable damage because the OPI stock which is the subject of Counts I through VI will be drained of all value.

Plaintiffs have moved for a preliminary injunction to have themselves reinstated as directors and officers of OPI and to have the board reconstituted as it existed immediately prior to May 21, 1971.[2]

Defendants by their answer to the amended and supplemental complaints have denied all acts of alleged wrongdoing. In addition they have filed a counterclaim which asks for an accounting against plaintiffs for excess salary payments, non-payment of obligations alleged to be due by plaintiffs to OPI and KDI and other alleged wrongs.

Thereafter OPI and Eggert, the present president of OPI and trustee of the OPI Profit Sharing Fund, intervened as parties defendant with respect to Count VII only and defendants answer and counterclaim.[3]

Pursuant to agreement of the parties, plaintiffs' motion for a preliminary injunction was consolidated under Rule 65 (a) (2) with the trial on the merits. The parties likewise agreed that the counterclaim could be tried at the same time. While the issue of plaintiffs' right to be paid their proportionate part of the profit sharing fund monies by Eggert, the trustee, was not included in the stipulated matters to be tried, that issue was in fact fully tried with the implied consent of all of the parties, and no objection has been raised by anyone as to its adjudication. A six day trial of the foregoing issues has taken place.

To summarize, three issues have been tried: (1) plaintiffs' right to be reinstated as officers and directors of OPI, (2) plaintiffs' right to their proportionate part of the OPI profit sharing fund monies, and (3) the right of OPI and KDI to an accounting from plaintiffs.[4] Under Rule 42(b) these have been tried as issues separate from Counts I through VI.

Jurisdiction over Counts I through VI exists under Section 22(a) of the Securities Act of 1933, as amended, and Section 20 of the Securities Exchange Act of 1934, as amended. Pendant

---

2. This motion was filed on May 24, 1971 in advance of the filing on May 29, 1971 of the supplemental complaint containing Count VII. This incongruity is explained by the fact that when the motion was originally filed the Court felt that it was premature, based as it was upon facts which had occurred after the original suit was begun, and insisted upon the filing of a supplemental complaint before the motion would be considered. All parties have implicitly agreed that the motion should be considered in support of the allegations of the supplemental complaint.

3. Count VII prayed for no payment to plaintiffs of profit sharing fund monies. It was not until after the filing of the amended and supplemental complaint which for the first time included Count VII that Eggert, the trustee of the profit sharing fund, and OPI intervened as parties defendant as to Count VII.

4. This opinion will be directed only to issues (1) and (2). A determination of issue (3) will await typing of the record and briefing.

jurisdiction exists as to Count VII. The pendant jurisdiction likewise supports the counterclaim.

### Reinstatement of Plaintiffs as Officers and Directors of OPI

■ As part of the Reorganization Agreement of May 20, 1969, plaintiffs had entered into employment contracts with OPI to serve as officers and directors for a term of two years which had expired on May 20, 1971. On May 21, 1971, the positions of Beach and DiRubbio as officers and directors of OPI were terminated by action of the officers and directors of KDI. At the time KDI was the owner of all of the stock of OPI.[5] The action to remove Beach and DiRubbio as officers and directors of OPI was validly and effectively taken in accordance with Section 228 of the Delaware Corporation Law and the Charter and By-Laws of OPI.

Plaintiffs argue that the value of OPI may be depleted during the period of KDI management and hence plaintiffs should be reinstated as officers and directors. Plaintiffs concede that they know of no fraudulent dissipation of OPI assets which has occurred since the officers and directors of OPI were installed by KDI and they know of no threat of any such dissipation.

It is not relevant, even if it were shown to be true, that the affairs of OPI have taken a turn for the worse since the KDI management took over or that plaintiffs' ouster from OPI was in the nature of a reprisal by KDI against plaintiffs for instituting the present suit.[6] In Heil v. Standard Gas & Electric Co., 17 Del.Ch. 214, 151 A. 303, 304 (1930) Chancellor Wolcott said:

> [S]tockholders have the right to exercise wide liberality of judgment in the matter of voting and may admit personal profit or even whims and caprice into the motives which determine their choice, so long as no advantage is obtained at the expense of their fellow stockholders. Allied Chemical & Dye Corp. v. Steel & Tube Co. of America, 14 Del.Ch. 1, 120 A. 486.

This principle was cited with approval in Ringling Bros.-Barnum & Bailey Combined Shows v. Ringling, 29 Del.Ch. 610, 53 A.2d 441, 447 (1947).

Both KDI and OPI are Delaware corporations and the rights of shareholders to choose officers and directors of a company are governed by the law of that state. The actions taken by the officers and directors of KDI in replacing plaintiffs in the management of OPI did not exceed the latitude which is accorded stockholders in exercising voting rights under Delaware law. Read in the context of the facts at bar, Bergen Drug Co. v. Parke, Davis & Co., 307 F.2d 725 (3d Cir. 1962), will not support the conclusion that plaintiffs are entitled to reinstatement as officers and directors of OPI.

■ Finally, plaintiffs contend that the removal of the plaintiffs from the OPI management constituted contempt of court by KDI and its officers and directors. Plaintiffs point out that on December 10, 1971, they filed in this suit a motion for a temporary restraining order and preliminary injunction which sought among other things an order that defendants would not interfere with the management of OPI during the pendency of this suit. A transcript of the December 10th argument on the motion is part of the record. On December 11th an order was entered upon stipulation of the parties that without further order of the Court the defendants would not take the action sought to be enforced. The stipulation provided:

> This stipulation shall expire 30 days from the date hereof, and may be

---

5. While Counts I to VI seek recision of the transaction by which KDI acquired the OPI stock from plaintiffs, no judgment can as yet be formulated as to the merits of plaintiffs' claim.

6. At the trial the Court ruled evidence of these alleged facts were not relevant after a general proffer of proof as to their existence was made by plaintiffs.

extended for such additional period or periods as the parties may agree.

The order also provided that the hearing on the preliminary injunction scheduled for December 18, 1970 should be continued with a reservation on the part of the plaintiffs to apply for a new date whenever plaintiffs felt that such an application was necessary.

The argument on December 10th and the stipulation and order of December 11th must be read as integral parts of a single proceeding. When this is done it is clear that nothing said during the argument on December 10th agreed to by the parties or ordered by the Court on December 11th, prevented the defendants from taking the action which they took on May 21, 1971.

The Court recognizes that on December 20, 1970 KDI filed a petition under Chapter XI of the Bankruptcy Act in the United States District Court for the Southern District of Ohio and in connection therewith KDI obtained, in an *ex parte* proceeding, an order staying all further prosecution of the instant suit. This order, unless modified, prevented plaintiffs from applying for injunctive relief within the 30 day period fixed by the December 11, 1970 order. That order did not, however, prevent plaintiffs from going before the Ohio Court to seek relief from the stay if they had seen fit to do so. Plaintiffs did not do this. Furthermore, there is nothing in the record to indicate that the plaintiffs sought to obtain a voluntary agreement on the part of the defendants to extend the December 11th stipulation. Under the circumstances, the defendants cannot be held to have violated the terms of any agreement entered into on December 10, 1970 or the stipulation or order of December 11, 1970 by their May 21, 1971 action.

Plaintiffs will not be reinstated as officers and directors of OPI.

*The Rights of Plaintiffs to Their Vested Share of the Profit Sharing Fund*

On October 29, 1959, OPI adopted the Employees' Profit Sharing Plan under I.R.C. § 401(a). Section 5.01 of the plan provides that OPI may make annual contributions out of profits to the plan fund in an amount to be determined by the Board of Directors each year. These contributions are deposited in a fund, invested as directed by the trustees, and used to pay benefits under the conditions stated in the Plan to participating employees after their services with OPI have ceased. OPI made contributions to the Plan every year since its adoption.

On May 21, 1971, the Wilmington Trust Company was acting as agent for the trustees. Its function was to act as custodian of the fund assets (except as to a relatively small checking account) and as an investment advisor. The accounting firm of Frank A. Gunnip & Co., of which Robertson is a Senior Accountant, has handled accounting and administrative functions related to the Plan.

As of October 31, 1970 the Plan Fund Balance amounted to $551,836.63. As of October 31, 1970, plaintiffs had vested interests in the Plan Fund Balance in the aggregate amount of $257,040. As of May 21, 1971 the October 31, 1970 value of the Fund had appreciated so substantially that the undivided interest of Beach and DiRubbio in it amounted to $295,099.

Since the adoption of the Plan, the plaintiffs had been trustees. When the Reorganization Agreement was entered into in May of 1969, Gunnip, a third trustee who had been serving with plaintiffs, resigned. In October of 1969 he was replaced by Owens, an employee of KDI. In early 1971, Owens left the employ of KDI. A representative of KDI advised Beach that KDI did not know where Owens could be located. Thereafter Owens ceased to communicate with OPI.

When plaintiffs' services with OPI were terminated on May 21, 1971, no formal action was taken by KDI or OPI to terminate plaintiffs' services as trustees under the Profit Sharing Plan, they did not notify plaintiffs informally that their services as trustees were at an end, nor did the Plan itself limit the term

of trustees to the period of their employment. Plaintiffs properly continued to act as trustees until June 4, 1971. On that date, OPI notified them that Eggart, the president of OPI, had been named as sole trustee and on that date plaintiffs ceased to act.

On May 22, 1971, plaintiffs, without attempting to secure the approval of the third trustee Owens, whose whereabouts was unknown to plaintiffs, caused cash payments in the form of two checks drawn on the Plan's checking account, aggregating $14,537.37, to be paid to themselves. Thereafter, and until replaced as trustees by Eggart, plaintiffs, alone or together with Hoffheinz, whom they purported to make a third trustee sometime between May 21 and June 4, 1971, sought unsuccessfully to have Wilmington Trust Company distribute to plaintiffs their undivided interest in the fund, as appreciated on May 21, 1971 less the $14,537.37 in cash which they had paid themselves on May 22, 1971. One purpose of this action is to compel Eggart, trustee, to make this distribution.

Defendants deny that plaintiffs were entitled to any distribution on May 21, 1971 or since. Defendants recognize that the Plan gave many discretionary powers to the trustees. Defendants point out, however, that Owens, the third trustee, did not consent to plaintiffs' actions on and after May 21, 1971, that the termination of plaintiffs as officers and directors of OPI implicitly removed them as trustees or at least made clear that their positions as trustees were in hazard and probably short lived, and that apart from these circumstances plaintiffs were disqualified from exercising any discretion as trustees in favor of themselves because of the duality of interest as trustees and beneficiaries under the Plan.

█ Any action which plaintiffs took before June 4, 1971 was not invalid because of the lack of Owen's consent as the third trustee. In early January of 1971 Owens had left KDI's employment and

plaintiffs had no knowledge of his whereabouts. Section 3.02 of the Profit Sharing Plan [7] provides:

> "The action of a majority of the Trustees shall constitute the action of the Trustees."

Plaintiffs constituted a majority of the trustees when they acted on and after May 21, 1971 and their actions were not invalid because taken without Owen's consent.

█ The question remains whether plaintiffs were entitled to a lump sum distribution from the fund immediately upon the termination of their services and if so in what amount.

The scheme of the Plan is plain. Article IX of which Section 9.01 to 9.05 are a part is captioned "Retirement" and relates to that subject. The "normal retirement date" is defined in Section 9.01 as "the anniversary date nearest to the sixty-fifth birthday of the Participant". Earlier or later "retirement" is permitted with the consent of the employer. Sections 9.01 and 9.02. The manner in which the fund may be distributed upon "retirement" is defined in Section 9.04. Forfeiture of the interest in the fund of a "retired" participant is provided for in Section 9.05 if after retirement the participant has violated the terms of his employment contract by taking a position with a competitor of OPI or divulged its trade secrets to competitors.

By contrast Article X is captioned "Termination of Employment Prior to Normal Retirement". It relates to that subject as do Sections 10.01 to 10.04 which are a part of Article X.

Since on May 21, 1971 plaintiffs were not "retired" employees but employees whose services had been "terminated" prior to normal retirement—neither having reached the age of sixty-five—their rights as participants in and their duties as trustees under the Plan were governed by Article X and not by Article IX.

---

7. References hereafter will be to the "Plan".

Plaintiffs had each been employed more than ten years and under Section 10.01 as amended on March 6, 1970, their interest in the fund was 100 per cent vested on May 21, 1971. Section 10.03 provides that in the event of termination:

"The vested amounts may become payable on the normal retirement date or earlier at the discretion of the Trustees and may be disbursed in installments or in a lump sum at the discretion of the Trustees who shall act uniformly in like situations."

Their termination having ante-dated their normal retirement date, under the Plan plaintiffs had the option at their discretion of disbursing their "vested amounts" in the fund either in a lump sum or in installments provided only that their action was consistent with that uniformly taken in like situations. During the twelve years of the Plan's existence the trustees had uniformly paid terminated employees, whether termination was voluntary or involuntary, their vested interest in the fund in a lump sum immediately after termination. Hundreds of terminated employees received their vested benefits in this manner and in no case did any terminated employee receive benefits other than in a lump sum immediately following termination.

Furthermore, by the terms of plaintiffs' employment contract with OPI they were required to take a lump sum payment. Paragraph 7 provides:

" . . . [A]fter termination of employment distribution of benefits [under the Plan] to employee will not be made except in a lump sum on account of termination of employment."

Section 10.02 provides for the forfeiture of a participant's interest in the fund in the event of termination of services for "dishonesty, disloyalty, which shall include disclosure of trade secrets or affairs of the Employer or entering into competition with the Employer, insubordination or the commission of a crime. . . ."

Plaintiffs' terminations were for none of these causes.

Defendants have conceded that plaintiffs are entitled to payment of their vested interest in a lump sum. They argue, however, that the trustees as fiduciaries should withhold until a future time this lump sum payment so as to maintain a lever for enforcing compliance by plaintiffs with paragraphs 5(b) and (c) of their employment agreements. Defendants point out that Section 9.05 of the Plan provides for forfeiture of unpaid amounts due to an employee under the Plan if the terms of paragraphs 5(b) and (c) are violated. Paragraphs 5(b) and (c) of plaintiffs' employment contracts prohibit during employment and after its termination for an indefinite time disclosure of OPI trade secrets and restrict competitive employment during employment and for three years after termination.

As previously pointed out Section 9.05 is part of Article IX which relates to "Retirement" of employees and is inapplicable to employees whose services have been terminated, the rights of the latter and the duties of the trustees to them being specified in Article X. Beyond this, and even if Section 9.05 is deemed to have relevance, it speaks in terms of "payments" being "discontinued" if a retired participant violates the non-competitive and non-disclosure provisions of his employment contract. This language indicates that installment payments and not a lump sum payment is referred to.

Furthermore, the non-disclosure covenants in 5(b) of plaintiffs' employment contracts are of indefinite duration. They operate as long as plaintiffs live. If defendants are right in applying Section 9.05 to plaintiffs it would mean that plaintiffs would never enjoy their vested interests in the Plan during their lifetime. To conclude that this was the intention of the parties takes a clearer expression of purpose than can be found in the instruments.

Finally, the prohibition against plaintiffs' employment by competitors for

three years found in paragraph 5(c) is effective only if plaintiffs are discharged for dereliction, malfeasance or wrongful action or failure, neglect or refusal to perform their duties. Plaintiffs were not discharged for dereliction, malfeasance or wrongful action or failure, neglect or refusal to perform their duties. For this reason 5(c) of the employment contract is not applicable to plaintiffs. Admittedly the wording of paragraph 5(c) is awkward and its application to plaintiffs is not free from ambiguity. But it is more reasonable to interpret the paragraph to prohibit non-competitive action in the case of a participant discharged for dereliction, malfeasance or wrongful action or failure, neglect or refusal to perform his duties, than it is to interpret it to permit competitive activities in these circumstances, and to bar it only where the discharge was not so occasioned.

It is clear, therefore, that plaintiffs were entitled to their vested interest in the fund when they demanded it on May 21, 1971, and that plaintiffs' distribution of a portion thereof and their efforts to obtain the remainder were proper.

■ The question remains whether, as plaintiffs claim, they are entitled to the increment in the value of their interest in the fund which had accrued between October 31, 1970 and May 21, 1971. The answer to this is to be found in the provisions of the Plan.

Section 7.05 provides:

"The Fund shall be valued at fair market value as of each anniversary date."

The Plan states in Section 7.03:

"As of each anniversary date any other increases,[8] or any decreases in the fair market value of the fund . . . since the preceding . . . anniversary date . . . shall be credited to or deducted from the accounts of Participants. . . ."

The "anniversary date" is defined in Section 2.01 as "October 31st". This is the date referred to in Sections 7.03 and 7.05. The accounts of participants are therefore to be valued each October 31st.

The plaintiffs argue that they had the discretionary right under Section 7.04 to adjust their account in the fund to reflect the increase in the fund between October 31, 1970 and May 21, 1971. Section 7.04 reads:

"All credits or deductions shall be deemed to have been made on the anniversary date to which they are related although actually determined at some later date. The Trustees, in their discretion shall have the right to adjust a Participant's account to reflect the Participant's share of any fluctuation in order to prevent discrimination or preference among the Participants' respective accounts."

This refers to adjustments made after the anniversary date in a given year (here October 31, 1970) which relate to the year preceding the anniversary date (here the year ending October 31, 1970). It does not authorize trustees to adjust the value of the fund as of an anniversary date because of an increase in the value of the fund after that anniversary date.

Furthermore, even if this construction of Section 7.04 were not proper, the last sentence of Section 7.04 as administered in the past prohibited the trustees from making a discretionary adjustment to up-value their interest as of May 21, 1971. Distributions between anniversary dates which the trustees had theretofore made to participants in the Plan were uniformly based on the prior anniversary date valuation. For plaintiffs to make a distribution to themselves on any other basis would be discriminatory and in violation of Section 7.04.

■ Defendants contend that plaintiffs' claim to their vested interest in the fund and their actions with respect to it must be judged by the rules of trust law

---

8. I. e., in addition to Employer's contributions for the year ending October 31st. See Section 7.01.

which impose the strictest standards of conduct upon trustees where their interests conflict with those of their beneficiaries; defendants argue that in these situations the trustees have the burden of justifying their conduct. Defendants quote from 2 Scott on Trusts, § 183:

"Where the Trustee is one of the beneficiaries, he will not be permitted in the administration of the trust to favor his own interest at the expense of that of other beneficiaries."

Nothing that plaintiffs have done since May 21, 1971 has been at the expense of other beneficiaries. Nor will a judgment requiring the present trustee, Eggart, to distribute the remaining interest of plaintiffs in the fund valued as of October 31, 1970 affect other participants in the Plan in any way other than that which the Plan itself contemplates.

Furthermore, the fiduciary limitations of plaintiffs are defined in the Plan.

"Any action in good faith which this Agreement authorizes or requires the Trustees to do shall be final and binding upon each Participant in the Plan and upon each and every person who may be or become interested in this Agreement, . . . ."

Section 3.03 states:

" . . . the responsibility of the Trustees in the performance of their functions hereunder shall be limited to the exercise of good faith and ordinary prudent business judgment."

No action which the trustees have taken since May 21, 1971 has violated these standards of responsibility. Plaintiffs acted in good faith and with ordinary prudent business judgment in withdrawing the $14,537.37 from the fund and in demanding immediate distribution in a lump sum of their vested interest in the fund. The Court does not overlook that plaintiffs have claimed the appreciated value of their interest since October 31, 1970 to May 21, 1971. This claim, although unjustified under the terms of the Plan, hardly warrants the Court holding that the interest which plaintiffs had in the assets valued as of October 31, 1970 should be forfeited, or withheld indefinitely for later distribution.

In addition, the Court does not overlook the fact that the trustees advised the Wilmington Trust Company shortly after May 21, 1971 that Owens had resigned as a trustee when no resignation had been received. This was not proper and of course should not have been done. This deviation, however, was not of such magnitude as to foreclose the plaintiffs from enjoying the substantial rights in the fund which they are entitled to.

Plaintiffs are entitled to have the defendant Eggart as trustee under the OPI Profit Sharing Plan distribute to each of them $121,251.31 with interest from May 21, 1971. This interest is to be computed so as to give plaintiffs the increase in the value of the fund from May 21, 1971 to date, applicable to their distributable interest as it existed on October 31, 1970. It is hoped that before judgment is entered the parties can agree upon this amount.

Decision upon plaintiffs' application for attorney's fees will be reserved for later consideration. So also with the decision upon the counterclaim. As stated, Counts I through VI have yet to be tried.

The foregoing constitute the findings of fact and conclusions of law required by the Rules of Civil Procedure.