490 F.2d 1312
 Fed. Sec. L. Rep. P 94,368
Frederick BEACH and Vincent Di Rubbio, Appellants in No. 72-1857.
v.
KDI CORPORATION, Appellant in No. 72-1856, et al., OPI Corp.
and Edward J. Eggart, Intervenors.
KDI Corporation and Ordnance Products, Inc., (OPI Corp.)
Appellants in No. 72-1856.
 Nos. 72-1856, 72-1857.
 United States Court of Appeals, Third Circuit.
 Argued May 22, 1973.
Decided Jan. 11, 1974.
 
 E. N. Carpenter, II, Richard J. Abrams, Richards, Layton & Finger, Wilmington, Del., for appellants in No. 72-1856 and appellees in No. 72-1857.
 Peter J. Walsh, Converse Murdoch, Murdoch, Longobardi, Schwartz & Walsh, Wilmington, Del., for appellees in No. 72-1856 and appellants in No. 72-1857.
 Before KALODNER, ALDISERT and ADAMS, Circuit Judges.
 OPINION OF THE COURT
 KALODNER, Circuit Judge.
 
 
 1
 Did the district court err in holding that it had 'pendent jurisdiction' with respect to intervening defendants' counterclaim, presenting state claims, in the instant action of Frederick Beach and Vincent Di Rubbio against KDI Corporation for rescission of a 'Reorganization Agreement,' grounded on alleged violations of the federal laws pertaining to securities transactions?
 
 
 2
 That is the primary question presented by these cross-appeals from the June 30, 1972 Final Judgment of the district court which granted in part, and denied in part, the various state claims asserted in the counterclaim of KDI, Ordnance Products, Inc. ('OPI') and Edward J. Eggart, chairman of the trustees of the OPI Employees' Profit-Sharing Plan ('Plan').
 
 
 3
 Although it has not been presented by the appellants, we raise, sua sponte, the critical primary question as to existence of 'pendent jurisdiction.' It is settled that 'the issue whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation,'[1] and that we may raise it sua sponte.[2]
 
 
 4
 The relevant facts gleaned from the record may be highlighted as follows:
 
 
 5
 The plaintiffs Beach and Di Rubbio are citizens of North East, Maryland.
 
 
 6
 The defendant KDI Corporation ('KDI') is a Delaware corporation with principal offices in Cincinnati, Ohio.
 
 
 7
 The intervening defendant OPI is a Delaware corporation with principal offices in North East, Maryland.
 
 
 8
 The intervening defendant Deward J. Eggart is president of OPI and trustee of the Plan.
 
 
 9
 Under a Reorganization Agreement, effective May 20, 1969, Beach and Di Rubbio transferred to KDI the capital stock of OPI, which they owned in equal shares, in exchange for 92,407 shares of KDI, valued in the Agreement at $2,525,000.00. The Agreement provided that KDI would issue additional shares of KDI stock to plaintiffs on January 31, 1971, based on certain specified formulae. It also provided in Section 3A that plaintiffs would reimburse KDI with respect to any liability of OPI incurred by reason of 'renegotiation or adjustment on government contracts . . . relating to the period from November 1, 1967 to the Transfer Date' (May 20, 1969).
 
 
 10
 The Agreement also specified that plaintiffs would be employed as officers of OPI for a two-year term expiring May 20, 1971 at a salary of $64,500.00 each, and that they could purchase at their cash surrender value policies which OPI had taken out on their lives, on delivery to OPI of their two-year 7 1/2% Promissory notes.
 
 
 11
 Plaintiffs filed an action against KDI on November 27, 1970, for rescission of the Agreement, return of their OPI stock, and damages. They alleged in 6-count complaint that KDI had violated the Securities Act of 1933,[3] and the Securities and Exchange Act of 1934,[4] in effecting the Agreement. The complaint was later amended by adding as additional defendants some of the officers of KDI.
 
 
 12
 On December 30, 1970, KDI filed a petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. 701 et seq., in the United States District Court for the Southern District of Ohio, and in connection therewith obtained a general stay order which operated to halt further prosecution of plaintiffs' November 27, 1970 action in the court below.
 
 
 13
 On May 21, 1971, a day after plaintiffs' two-year employment contract expired, they were removed as officers and directors of OPI by a new board of directors elected by KDI as sole stockholder of OPI.
 
 
 14
 On May 24, 1971, plaintiffs filed a motion in the court below for a preliminary injunction to effect their reinstatement as officers, directors and employees of OPI.
 
 
 15
 On May 28, 1971, the Ohio bankruptcy court, on plaintiffs' application, entered an order modifying its general stay order of December 30, 1970 so as to permit plaintiffs to proceed in the court below with their May 24, 1971 motion for a preliminary injunction.
 
 
 16
 On June 4, 1971, OPI notified plaintiffs that they were removed as trustees of the Plan.
 
 
 17
 On June 7, 1971, KDI filed a motion in the court below for a restraining order and preliminary injunction prohibiting plaintiffs from continuing to act as two of the three authorized trustees of the Plan.
 
 
 18
 On June 9, 1971, the court below denied KDI's June 7, 1971 motion, and further ordered plaintiffs (1) to file a supplemental complaint relating to their May 24, 1971 motion for a preliminary injunction, and (2) to apply to the Ohio bankruptcy court for authorization to do so.
 
 
 19
 On June 24, 1971, an order was entered by the Ohio bankruptcy court authorizing the filing of a supplemental complaint relating to the plaintiffs' May 24, 1971 motion for a preliminary injunction.
 
 
 20
 On June 29, 1971, plaintiffs filed an Amended and Supplemental Complaint. It added to their original 6-count complaint, seeking rescission of their Reorganization Agreement with KDI, a Count VII which alleged events occurring after the filing of their original complaint. Count VII alleged in relevant part that KDI had ousted plaintiffs as directors of OPI as part of a scheme to compel them to withdraw their rescission action, and prayed for a preliminary injunction ordering KDI to reinstate the plaintiffs as directors of OPI and to further reconstitute the OPI board of directors as it existed on May 21, 1971.
 
 
 21
 On July 23, 1971, KDI and the individual defendants filed an Answer to the Amended and Supplemental Complaint which denied any wrongdoing and asserted certain affirmative defenses. KDI alone therein prayed for an order declaring as valid plaintiffs' removal as officers, directors and employees of OPI, and as trustees of the Plan; and for further orders requiring plaintiffs (1) to account to OPI and to the Plan for all distributions made to them; (2) to surrender to the trustees of the Plan all of the latter's assets, books and records; and (3) to restrain plaintiffs from acting as trustees of the Plan or as officers, directors or employees of OPI.
 
 
 22
 On August 2, 1971, plaintiffs filed an answer to the KDI counterclaim in which they challenged its allegations and asked for its dismissal.
 
 
 23
 On December 1, 1971, the district court granted leave to KDI to file an Amended and Supplemental Answer and Counterclaim, and further granted the motion of OPI and Eggart, as president of OPI and as trustee of the Plan, 'for leave to intervene as parties defendant with respect to Count VII (only) of the plaintiffs' Amended and Supplemental Complaint, and with respect to the defendants' Amended and Supplemental Answer to plaintiffs' Amended and Supplemental Complaint and Counterclaim.' The motion to intervene alleged as follows:
 
 
 24
 'The grounds for this motion are, that OPI is a party which would be directly affected by the relief sought by plaintiffs, and is a proper party to assert defenses against plaintiffs' claims; that OPI is a proper party to seek the affirmative relief sought against plaintiffs by the defendants' Amended and Supplemental Answer and Counterclaim; and that OPI and Eggart are parties directly affected by the relief sought by plaintiffs' complaint in respect to the OPI Employees' Profit Sharing Plan and sought by defendants' Amended and Supplemental Answer and Counterclaim in respect to said Plan.'
 
 
 25
 The defendants' Amended and Supplemental Answer and Counterclaim was filed December 6, 1971. The counterclaim, which ran only to OPI, was captioned 'Counterclaim by KDI Corporation, OPI Corporation and Edward J. Eggart.' It alleged in relevant part as follows:
 
 
 26
 '75. Plaintiffs are liable to OPI for the following items, recoverable against plaintiffs individually or as offsets from such amounts, if any, as may be attributable to them as terminated employees under the OPI Employees' Profit Sharing Plan;
 
 
 27
 '(a) Excessive salary payments in violation of the terms of the Reorganization Agreement with KDI and of agreements with third-party creditors of OPI;
 
 
 28
 '(b) Amounts recovered or recoverable by the Federal Government against OPI under renegotiation or defective pricing claims, for which plaintiffs are personally liable under the terms of the Reorganization Agreement with KDI;
 
 
 29
 '(c) Insurance notes due and payable to OPI in the aggregate amount of $36,264.07;
 
 
 30
 '(d) Personal advance and loan accounts with OPI aggregating $22,246.70;
 
 
 31
 '(e) Personal expenses improperly charged to OPI as business expenses;
 
 
 32
 '(f) Unauthorized and improper advance employer contributions to the OPI Employees' Profit Sharing Plan in the amount of $32,525.23.
 
 
 33
 '76. The Answering Defendants have no adequate remedy at law.
 
 
 34
 '77. An accounting is necessary to determine the exact amount of plaintiffs' personal liabilities to OPI and KDI as alleged in paragraph 75 hereinabove.'
 
 
 35
 On December 8, 1971, plaintiffs filed an Answer to the Counterclaim of KDI, OPI and Eggart, in which they (1) asked for its dismissal; and (2) an order directing a distribution to plaintiffs of $295,099.00 from the Plan, plus punitive damages and attorneys' fees incurred in their defense of the Counterclaim.
 
 
 36
 On December 14, 1971, plaintiffs filed an Amended Answer to the KDI, OPI and Eggart Counterclaim in which they pleaded affirmative defenses of failure of consideration with respect to the claimed liability of plaintiffs to OPI in connection with the Federal Government's defective pricing claim, and the overdue $36,264.07 two-year promissory notes given by plaintiffs to OPI when they purchased OPI's insurance policies on their lives.
 
 
 37
 It may be noted parenthetically that in June 1971, OPI settled for $114,000.00 a so-called 'defective pricing claim' of the Federal Government arising out of OPI sales to the Government prior to May 20, 1969, and that the Government deducted the $114,000.00 in 1971 from amounts otherwise due OPI on current sales to the Government. Plaintiffs never reimbursed KDI or OPI with respect to the stated $114,000.00 'defective pricing claim' settlement.
 
 
 38
 The issues presented by Count VII of the plaintiffs' Amended and Supplemental Complaint, the KDI-OPI-Eggart Counterclaim, and plaintiffs' Counterclaims, were tried to the district court in a six-day trial in December 1971.
 
 
 39
 The district court in an opinion filed December 28, 1971, reported at 336 F.Supp. 229 (D.Del.1971), spelled out the sweep of the trial as follows:
 
 
 40
 'To summarize, three issues have been tried: (1) plaintiffs' right to be reinstated as officers and directors of OPI, (2) plaintiffs' right to their proportionate part of the OPI profit sharing fund monies, and (3) the right of OPI and KDI to an accounting from plaintiffs. Under rule 42(b) these issues have been tried as issues separate from Counts I through VI.' 336 F.Supp. at 231.
 
 
 41
 After defining the issues tried, the district court held that 'pendent jurisdiction' existed with respect to them. In doing so, it said:
 
 
 42
 'Jurisdiction over Counts I through VI exists under Section 22(a) of the Securities Act of 1933, as amended, and Section 20 of the Securities Exchange Act of 1934, as amended. Pendant jurisdiction exists as to Count VII. The pendant jurisdiction likewise supports the counterclaim.' 336 F.Supp. at 231-232.
 
 
 43
 The December 28, 1971 opinion disposed of issues (1) and (2), presented by plaintiffs' Count VII and counterclaims. It reserved for later disposition issue (3), presented by the KDI-OPI-Eggart Counterclaim, and plaintiffs' application for counsel and accountants' fees.
 
 
 44
 It decided as to issue (1) that the May 21, 1971 removal of plaintiffs as officers and directors of OPI was valid, and that plaintiffs were not entitled to an injunction directing their reinstatement. It held as to issue (2) that plaintiffs were each entitled to a distribution of $121,251.31, plus interest, from the Plan.
 
 
 45
 The district court's December 30, 1971 judgment, entered pursuant to its opinion, was not appealed.
 
 
 46
 The district court, in a second opinion filed June 16, 1972, reported at 344 F.Supp. 1230 (D.Del.1972), disposed of issue (3), and plaintiffs' application for counsel and accountants' fees, as follows:
 
 
 47
 ( 1) it held OPI was entitled to a judgment of $19,092.12 against Beach, and a judgment of $17,171.95 against Di Rubbio, with interest, on their notes in exchange for the OPI insurance policies on their lives;
 
 
 48
 (2) it denied defendant's claim that plaintiffs were liable to OPI for excessive salary payments and business expenses;
 
 
 49
 (3) it denied defendants' claim that plaintiffs had caused OPI to make improper advance contributions to the Plan;
 
 
 50
 (4) it denied OPI indemnification against plaintiffs with respect to the Federal Government's recovery of $114,000.00 from OPI on its 'defective pricing claim,' on the ground that plaintiffs' indemnification obligation under the Agreement was 'discharged' by reason of KDI's failure to issue additional shares to plaintiffs on January 31, 1971 as provided by the Agreement; and
 
 
 51
 (5) it denied plaintiffs' application for counsel and accountants' fees in contesting defendants' counterclaim 'in the exercise of its discretion.'[5]
 
 
 52
 The foregoing dispositions were given effect in a Final Judgment entered by the district court on June 30, 1972.[6]
 
 
 53
 Plaintiffs have appealed from the judgment insofar as it made them liable to OPI on their insurance notes and denied their application for counsel and accountants' fees.[7]
 
 
 54
 Defendants have appealed from the dismissal of their claim that plaintiffs were liable to OPI under the indemnification provisions of the Agreement with respect to the Federal Government's $114,000.00 recovery from OPI on its 'defective pricing claim,' and dismissal of OPI's counterclaim for 'personal advances and loan accounts' allegedly due by plaintiffs.
 
 
 55
 The parties have not challenged the district court's 'pendent jurisdiction' holding in these cross-appeals. It is settled, however, that jurisdiction of a federal court cannot be created by consent of the parties.[8]
 
 
 56
 We have, sua sponte, raised the threshold question whether the district court erred in holding that it had 'pendent jurisdiction' as to the counterclaim adjudicated in its June 30, 1972 Final Judgment.
 
 
 57
 The district court reasoned that since it had jurisdiction of the federal claim presented in Counts I-VI of plaintiffs' complaint, 'Pendant jurisdiction exists as to Count VII,' and, 'the pendant jurisdiction likewise supports the counterclaim.'
 
 
 58
 The pendent jurisdiction doctrine affords no nourishment to the district court's reasoning.
 
 The doctrine may be epitomized as follows:
 
 59
 Pendent jurisdiction, in the sense of judicial power, exists as to a plaintiff's state claim which lacks independent basis of jurisdiction, when it is joined with a federal claim, provided, however, that the state and federal claims 'derive from a common nucleus of operative fact.'[9]
 
 
 60
 Here, the district court disregarded the fact that the pendent jurisdiction doctrine pertains only to a state claim of a plaintiff when it held that pendent jurisdiction extended to the counterclaim of intervening defendants.
 
 
 61
 The district court further disregarded the circumstance that the doctrine applies only where a state claim is joined with a federal claim, and both claims are derived 'from a common nucleus of operative fact.'
 
 
 62
 Neither Count VII nor the counterclaim to Count VII presented a federal claim. They presented only state claims: Count VII for reinstatement; the counterclaim for alleged indebtedness of plaintiffs to OPI.
 
 
 63
 The claims in Count VII and the counterclaim were not derived from a 'common nucleus of operative fact.' The 'operative fact' in Count VII was the ouster of plaintiffs from their OPI offices and directorships as part of an alleged KDI scheme to force plaintiffs to abandon their action for rescission of the Agreement, set forth in Counts I-VI; the 'operative fact' in the counterclaim was the alleged indebtedness of plaintiffs to OPI.
 
 
 64
 Further, since the 'operative fact' in rescission Counts I-VI was KDI's alleged violation of federal laws in effectuating the Agreement, there was no 'common nucleus of operative fact' with respect to that claim and the claims of Count VII and the counterclaim. Notation of the absence of a 'common nucleus of operative fact' as to Counts I-VI, Count VII and the counterclaim is relevant because the district court premised its holding that pendent jurisdiction existed as to Count VII and the counterclaim on the existence of jurisdiction as to the federal claim presented by Counts I-VI.
 
 
 65
 Count VII did present a claim to which ancillary jurisdiction attached because it charged KDI with conduct designed to thwart the judicial process, viz., prosecution of plaintiffs' rescission action.[10] Ancillary jurisdiction is not necessarily pendent jurisdiction. See Schwab v. Erie Lackawanna R.R. Co., 438 F.2d 62, 70 n.18 (3d Cir. 1971).
 
 
 66
 The existence of ancillary jurisdiction as to Count VII afforded no prop to the district court's holding that 'the pendant jurisdiction likewise supports the counterclaim.'
 
 
 67
 In light of the considerations stated we are of the opinion that the district court erred in holding that it had 'pendent jurisdiction' as to the counterclaim.
 
 
 68
 We are further of the opinion that the district court was without jurisdiction of any kind as to the counterclaim for these reasons:
 
 
 69
 OPI and Eggart were granted leave to intervene as defendants only as to Count VII, pursuant to the 'Permissive Intervention' provision of Rule 24(b), Fed.R.Civ.P.
 
 Rule 24(b), provides in relevant part:
 
 70
 'Permissive Intervention. Upon timely yapplication anyone may be permitted to intervene in an action: (1) when a statute of the United States confers a conditional right to intervene; or (2) when an applicant's claim or defense and the main action have a question of law or fact in common.'
 
 
 71
 Putting aside the fact that the 'claim or defense' of OPI and Eggart, and the main action, Count VII, did not 'have a question of law or fact in common,'[11] the district court was foreclosed from considering the intervenors' counterclaim for this reason:
 
 
 72
 It is settled that 'if the intervention is a permissive one the claim must be supported by independent jurisdictional grounds,' Babcock & Wilcox Company v. Parsons Corporation, 430 F.2d 531, 540 (8th Cir. 1970), otherwise 'it will be excluded from the case.' Diamond v. Terminal Railway Alabama State Docks, 431 F.id 228, 236 (5th Cir. 1970).[12]
 
 
 73
 Here, the counterclaim was not supported by independent jurisdictional grounds, viz., diversity jurisdiction, inasmuch as plaintiffs, OPI and Eggart are all citizens of Maryland.
 
 
 74
 For all the reasons stated we are of the opinion that the district court was without jurisdiction to entertain the counterclaim.
 
 This, too, must be said:
 
 75
 As earlier detailed, the federal government recovered $114,000.00 from OPI in an adjustment of its 'defective pricing claim.' Schedule 3A of the Agreement provided that plaintiffs would reimburse KDI for such an adjustment. The counterclaim, however, alleged that plaintiffs were liable to OPI for the $114,000.00.
 
 
 76
 The district court after holding that 'Schedule 3A does not in terms provide for reimbursement of OPI but only KDI' nevertheless construed Schedule 3A to give 'KDI an option' to be reimbursed 'directly or, . . . indirectly through OPI,'[13] and held that KDI had opted to make the reimbursement run to OPI. The district court then decided the plaintiffs were 'discharged from their obligation to reimburse OPI' because KDI had failed to issue additional KDI shares to plaintiffs as provided by the Agreement.[14]
 
 
 77
 It is clear that even if the district court had jurisdiction generally as to the counterclaim it was without jurisdiction to adjudicate issues as to KDI's rights under the indemnification provisions of the Reorganization Agreement since the bankruptcy court alone had exclusive jurisdiction on that score. In Matter of Imperial '400' National, Inc., 429 F.2d 671 (3d Cir. 1973).[15]
 
 
 78
 There ws no basis for the district court's holding that Section 3A gave KDI 'an option' to assign to OPI its right of reimbursement. Assuming that Schedule 3A did provide such an option and that KDI did exercise it, it was an exercise in futility since it was without express authorization of the bankruptcy court and the district court should have taken cognizance of that fact. Since Schedule 3A provided that the indemnification claim ran only to KDI, it was an asset of the bankrupt estate as to which the bankruptcy court had exclusive jurisdiction.
 
 
 79
 The bankruptcy court's general stay order was a bar to the district court's adjudication of KDI's right to the indemnification claim. The modification of the stay order to permit filing of plaintiffs' Count VII for reinstatement was a limited modification. It implicitly gave KDI the right to defend the merits or legality of the reinstatement claim. It did not, however, give KDI the right to sue-- conterclaim-- for the pricing claim nor did it permit KDI to assign the claim to OPI.[16]
 
 
 80
 There remains for disposition plaintiffs' contention that the district court erred in denying its claims for counsel and accountants' fees in its June 30, 1972 Final Judgment.
 
 
 81
 On review of the record we cannot say that the district court abused its permissible discretion in denying plaintiffs' application for counsel and accountants' fees.
 
 
 82
 For the reasons stated the Final Judgment of the district court of June 30, 1972 will be reversed and vacated except as to its denial of plaintiffs' application for attorneys' and accountants' fees, and the cause will be remanded to the district court with directions to dismiss defendants' counterclaim for want of jurisdiction.
 
 
 
 [1]
 United Mine Workers of America v. Gibbs, 383 U.S. 715, 727, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)
 
 
 [2]
 Sedivy v. Richardson, 485 F.2d 1115 (3d Cir. 1973)
 
 
 [3]
 15 U.S.C.A. 77a et seq
 
 
 [4]
 15 U.S.C.A. 78a et seq
 
 
 [5]
 344 F.Supp. at 1243
 
 
 [6]
 'Final Judgment
 'And Now, to Wit, this 30th day of June, 1972, certain issues having been tried and an opinion having been rendered with respect thereto on June 16, 1972, and it appearing that the United States District Court for the Southern District of Ohio, Western Division, has issued a stay which prevents plaintiffs from litigating pending issues which have not yet been resolved,
 'It Is Ordered and Adjudged:
 '1. OPI is entitled to a judgment of $19,092.12 against Beach, and a judgment of $17,171.95 against Di Rubbio, in each instance with interest from May 13, 1971;
 '2. Except as stated in paragraph 1, the counterclaim of defendants is dismissed;
 '3. Plaintiffs' application for attorneys' and accountants' fees is denied.
 'Pursuant to Rule 54(b) the Court expressly determines that there is no just reason for delay in entering final judgment with respect to the above matters and the Clerk is expressly directed to enter such a judgment.'
 
 
 [7]
 Plaintiffs also challenge the district court's ruling that $114,000.00 was the 'net' effect of the Federal Government's 'defective pricing claim' albeit defendants' claim with respect to the pricing claim was dismissed
 
 
 [8]
 American Fire & Cas. Co. v. Finn, 341 U.S. 6, 17-18, 71 S.Ct. 534, 95 L.Ed. 702 (1951); People's Bank v. Calhoun, 102 U.S. 256, 260-261, 26 L.Ed. 101 (1880); Babcock & Wilcox Company v. Parsons Corporation, 430 F.2d 531, 540 (8th Cir. 1970)
 
 
 [9]
 United Mine Workers of America v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). To the same effect, see Moor v. County of Alameda, 411 U.S. 693, 712, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973)
 
 
 [10]
 Morrow v. District of Columbia, 135 U.S.App.D.C. 160, 417 F.2d 728, 740 (1969)
 
 
 [11]
 Count VII charged that KDI ousted plaintiffs as officers and directors of OPI as part of a KDI scheme to compel plaintiffs to withdraw their pending action to rescind the Agreement. The counterclaim asserted claims for alleged indebtedness of plaintiffs to OPI
 
 
 [12]
 See too 3B Moore, Federal Practice, P24.18 (1), at 24-753 (2d ed. 1969), and Wright, Federal Courts, 75, at 331 (2d ed. 1970)
 
 
 [13]
 344 F.Supp. at 1237
 
 
 [14]
 In so holding the court said:
 'The undertaking by plaintiffs in the reorganization agreement, including the indemnification and reimbursement obligations in Section 8(b) and Schedule 3A were given in exchange for the promises of KDI to issue to plaintiffs the KDI shares specified in the agreement. The failure of KDI to issue the 'guarantee shares' constituted a material failure of consideration and breach of the agreement which discharged plaintiffs from their obligations to reimburse OPI . . ..' 344 F.Supp. at 1239.
 The stated holding is utterly inconsistent with the district court's simultaneous rejection of plaintiffs' contention that KDI's failure to deliver additional shares constituted a failure of consideration for the insurance notes which they gave to OPI. In rejecting the contention the district court said:
 'Plaintiffs gave the notes to OPI not to KDI. OPI did not breach the reorganization agreement. It was not a party to it. Because KDI may have done so is no reason to discharge plaintiffs from paying their obligation to OPI.' 344 F.Supp. at 1233.
 
 
 [15]
 Section 311 of the Bankruptcy Act, 11 U.S.C.A. 711, provides in relevant part that the court in which a Chapter XI petition is filed 'shall . . . have exclusive jurisdiction of the debtor and his property, wherever located.'
 
 
 [16]
 The counterclaim was not a 'compulsory counterclaim' within the meaning of Rule 13(a) of the Fed.R.Civ.P. It had no 'logical relationship' to Count VII. Great Lakes Rubber Corporation v. Herbert Cooper Co., Inc., 286 F.2d 631, 634 (3d Cir. 1961). Disposition of Count VII in plaintiffs' favor would not have bound OPI in a res judicata sense insofar as its debt claims against plaintiffs were concerned