Louis C. MIRIANI and Vera Miriani,
Plaintiffs,

v.

RODMAN AND RENSHAW, INC., a Del-
aware corporation, et al., Defendants.

RODMAN & RENSHAW, INC.,
Counter-plaintiff,

v.

Louis C. MIRIANI, Counter-defendant.

No. 72 C 1093.

United States District Court,
N. D. Illinois, E. D.

April 3, 1973.

**1012**

Richard A. Makarski and Stephen E. Kitchen of Chapman & Cutler, Chicago, Ill., for plaintiffs.

Charles A. Brady, of Ettelson, O'Hagan, Ehrlich & Frankel, Chicago, Ill., for defendants.

Narcisse Brown, of Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for counter-plaintiff.

Jack Teplitz, U. S. Dept. of Justice, Sheldon Waxman, Asst. U. S. Atty., for the United States.

## MEMORANDUM OPINION

WILL, District Judge.

This case involves determinations of liability and ownership arising out of the alleged theft of securities from the plaintiffs, the Mirianis, and the subsequent sale of those securities to defendant and counter-plaintiff, Southeast Guaranty Trust Company, Ltd. (Southeast). Rodman and Renshaw, Inc. (Rodman), defendant, counter-plaintiff and cross-defendant in this action, is moving for summary judgment in its favor as against the Mirianis on Count V of

their Second Amended Complaint, and as against Southeast on its Cross Complaint. In the alternative, Rodman seeks the entry of an order striking both counts for failure to state a cause of action. For the reasons set out below, both the motions for summary judgment and the motions to strike are denied.

In an earlier opinion of this court, dated January 23, 1973, 358 F.Supp. 1001, disposing of various motions to dismiss made by several of the defendants, the rather lengthy and complicated facts of this case were set out in full. They will not be repeated here except as is necessary to dispose of the motions at hand.

### I

The Mirianis allege that certain municipal bonds were stolen from them and that they immediately notified all paying agents/trustees of the bonds of the theft. Later, Southeast, through its agent, Geist, negotiated with defendants Spiwak and Levy for the purchase of these same bonds. Southeast went to its broker, Rodman, and requested a check on the validity of the bonds and assistance in the resale of the bonds after they were purchased. In reliance on Rodman's assurances that the bonds were valid, Southeast purchased the bonds at a substantial discount and authorized their resale. It was then discovered that the bonds had been stolen from the Mirianis and the resales were all cancelled. Both Southeast and the Mirianis claim lawful ownership of the bonds and seek a determination to that effect.

Count V of the Miriani complaint alleges a breach of a duty owed the Mirianis, as original owners, by Rodman through its negligence in failing to make a proper check of the validity of the bonds after being retained to do so by Southeast. In the event Southeast is determined to be a bona fide purchaser for value, and consequently awarded ownership, the Mirianis seek indemnification from Rodman for the value of the bonds.

In its Cross-Complaint, Southeast alleges this same negligence on the part of Rodman in verifying the bonds.[1] In the event Southeast is determined not to be the lawful owner, it seeks reimbursement in the amount paid for the bonds in reliance on the information given it by Rodman.

Rodman has moved for summary judgment claiming it cannot be held liable to either party even assuming, for the purposes of these motions, its investigation of the validity of the bonds was performed negligently. It contends that, since negligence is irrelevant to the determination of ownership of the bonds under the applicable provisions of the Uniform Commercial Code (U.C.C.), any negligence on its part could not have been the proximate cause of any injury suffered. Additionally, it argues that no law imposed any duty on it to investigate the validity of the bonds, and therefore any negligence on its part in doing so cannot be actionable as there has been no breach of a duty. This latter argument is urged most strongly against the Mirianis, to whom Rodman denies the existence of any duty whatsoever.

We cannot accept defendant's arguments. First, it is not correct that negligence is always irrelevant to the determination of ownership under the U.C.C. A bona fide purchaser, who acquires good title even as against the true owner, is defined as one who takes "for value in good faith and without notice of any adverse claim." Ill.Rev.Stat., ch. 26, § 8–302. This test encompasses three distinct elements: "value", "good faith", and lack of "notice of any adverse claim." (See Official Comment following § 8–304.) Assuming the requirement of value is satisfied, Rodman appears to argue that, for the remaining two elements, the bona fides of a purchaser are tested only by what has been characterized as a

"pure heart, empty head" approach—did the purchaser act honestly in the conduct or transaction concerned; and did he, in fact, have any actual knowledge of the adverse claim. In Rodman's view, a finding that Southeast is not a bona fide purchaser "could only be predicated on a lack of value or honesty or on notice or knowledge which would render the request to Rodman and Renshaw [to verify the bonds] meaningless." (Brief for defendant, p. 5)

■ While Rodman correctly characterizes the test of "good faith" as a subjective one, it overlooks a significant provision included in the Code's definition of "notice":

> (25) A person has 'notice' of a fact when
>
> (a) he has actual knowledge of it; or
>
> (b) he has received a notice or notification of it; or
>
> (c) *from all the facts and circumstances known to him at the time in question he has reason to know that it exists.* Ill.Rev. Stat., ch. 26 § 1–201(25) (emphasis supplied)

Obviously, Southeast could not overcome any actual knowledge it had of a defect in the title to the bonds simply because it relied on Rodman's representation that the bonds were "valid." Such knowledge would bar a determination of ownership and might indeed bar any recovery against Rodman.

■ However, in the facts of this case, it is not inconceivable that a trier of fact would bar Southeast's status as a bona fide purchaser by finding it had constructive knowledge of the adverse claim as contemplated by subsection (c), quoted above. The substantial discount at which the bonds were being offered

---

1. For reasons explained in our earlier opinion, Southeast's Cross-Complaint is not technically before this court, and will not be until Southeast obtains a Certificate of Authority from the Secretary of State. It is currently in the process of obtaining such a certificate, however, and we have no indication that its issuance will not be forthcoming. In light of this, we will treat the Cross-Complaint as properly here for the purposes of this opinion.

# 1014

to Southeast made several of defendant's employees skeptical about the proposed transaction, and they conveyed this skepticism to Southeast's agent. The oddity of the discounted price alone may be enough to justify a finding of constructive knowledge. If such is the case, negligence by Rodman in failing to discover the adverse claim to the bonds could well be found to be the proximate cause of the injury to Southeast, which relied on Rodman's verification in deciding to purchase the bonds.[2]

## II

Rodman's second argument appears to be that since the law imposed no duty on it to make a check into the validity of bonds being purchased or sold by its customers, any negligence in making such a check cannot constitute an actionable breach of a duty. In support, it cites cases holding that no cause of action is stated under the U.C.C. or the Rules of the New York Stock Exchange and the Securities Exchange Act of 1934 when a broker fails to ascertain title and ownership of securities brought in by a customer for resale. See Aetna Casualty Co. v. Paine, Webber, Jackson & Curtis, CCH Sec. Law Rep. ¶ 92,748 (N.D.Ill. 1970) and cases cited therein. Further, it relies on cases where the broker's negligence in ascertaining title or failure to do so altogether, did not defeat a subsequent purchaser's right to ownership.

Entirely different questions are presented in this case. First, *Aetna Casualty*, and the cases it discusses, involved the determination of whether or not a federal cause of action was stated. Here, the jurisdiction of this court is predicated solely on diversity of citizenship and no federal question is asserted. Consequently our inquiry is limited to whether the allegations of the complaint state a cause of action of negligence according to the law of this state.

Second, the question of whether there is an independent statutory duty on a broker to conduct a non-negligent investigation into the validity of bonds brought to it for resale is irrelevant here where Southeast retained Rodman to perform that service and Rodman undertook its performance. It would be absurd to say that, because someone is under no statutory duty to perform a certain function, it is absolved of all responsibility when it agrees to perform that function at the request of a client and then performs negligently. In *Aetna, supra,* the service requested of the broker by its customer was only to sell the securities which had ostensibly already been "purchased." Here, Southeast requested a verification of the bonds in order to decide whether or not to make the purchase.[3] Under these circumstances, Rodman clearly had a duty to perform with a reasonable amount of care. If breach of that duty is found to be the proximate cause of injury to Southeast, that breach is actionable.

Thus, we cannot say, as we must in order to grant summary judgment, that Rodman would be entitled to judgment as a matter of law, even if its examination was negligent. Consequently, its motion must be denied as to the Cross Complaint of Southeast.

## III

The possibility of liability to Southeast being clear, the question is then, whether, if Southeast is determined to be the lawful owner of the bonds, Rodman could be held liable to the Mirianis. Rodman denies the existence of any duty owed them at all, claiming that, since the law governing the rights *inter se* Southeast

2. The notice-forgotten-in-good-faith cases on which Rodman so heavily relies are properly considered under subsection (b) of the notice definition, not under subsection (c).

3. The only relevant analogy to the *Aetna* case would be if the parties to whom Southeast subsequently sold the bonds had brought an action against Rodman for its negligent investigation of the validity of the bonds, even though those subsequent purchasers made no request for such a verification.

and the Mirianis places no burden on Southeast to check out the validity of the bonds, the delegation of this non-existent duty, and Rodman's negligent performance thereof, cannot expose it to liability to the Mirianis. All that was required of Southeast, Rodman argues, was basic honesty in the premises, and there is no allegation that Rodman, as Southeast's agent, did not act with this requisite honesty.

Rodman is once again mistaken in its assessment of what legal principles are applicable. It raises only those that govern the rights between Southeast and the Mirianis and ignores the fundamental principles of tort liability which are determinative of this issue. Illinois law does not preclude liability in the facts of this case. We note in particular, the Illinois Supreme Court's discussion of the scope of liability in the recent case of Rozny v. Marnul, 43 Ill.2d 54, 250 N.E.2d 656 (1969). There, after a comprehensive discussion of the developments in tort law in third-party negligent misrepresentation cases, the Court found a surveyor, who had entered into a contract with one party, liable to a third party which had relied to its detriment on what proved to be an erroneous survey. The Court made a point of emphasizing that the lack of a direct contractual relationship between the parties is not a defense in a tort action in this jurisdiction and went on to state:

> Thus, tort liability will henceforth be measured by the scope of the duty owed rather than the artificial concepts of privity. 250 N.E.2d at 660.

Using this standard, the two considerations the Court deemed most important were the extent of possible liability of the defendant, and the foreseeability of the particular injury involved. As to potential liability, the Court distinguished those cases where such liability was virtually limitless because in the Rozny case, injury would occur only once and only to the one person who, in reliance on the survey, purchased the lot or financed its purchase. Cf. Ultramares Corp. v. Touche, Niven & Co., 255 N.Y. 170, 174 N.E. 441 (1931). Similarly, here, injury will only be suffered by one party—either the Mirianis or Southeast —depending on which is determined to be the lawful owner of the bonds. Like *Rozny*, this is not a "situation [is not one] fraught with such an overwhelming potential liability as to dictate a contrary result . . . ." 250 N.E.2d at 662.

█ As to the foreseeability of the particular injury, the Court there found that the defendant knew the surveys were customarily used by persons like plaintiff, and that those persons could be injured should the survey prove to be incorrect. Similarly, here, when Rodman agreed to undertake the investigation of the validity of the bonds, it either knew or should have known that if it failed to use due care, and as a result, told Southeast the bonds were valid when in fact they were not, Southeast could become a bona fide purchaser and gain title to the bonds over the true owner. Consequently, we find that under the rationale of Rozny v. Marnul, *supra*, the Mirianis, as adverse claimants to the bonds, are within the foreseeability doctrine of Illinois negligence law and could be found to be owed a duty by Rodman. Rodman's motion for summary judgment, therefore, will be denied.

## IV

In the alternative, Rodman has moved to strike Count V of the Miriani complaint and the Southeast Cross-Complaint for failure to state a cause of action. It argues these complaints fail to allege that, had a proper check been made by Rodman, the fact that the bonds were stolen would have been discovered. This failure in pleading, it argues, is sufficient to strike the counts. We disagree.

█ It is alleged that the Mirianis notified all the paying agents/trustees on the bonds of the theft immediately after discovery of the theft. It is also alleged that Rodman failed to contact these paying agents/trustees and failed to check its own internal records and other indus-

try sources properly in making their purported verification of the validity of the bonds. It requires no great stretch of the imagination to infer the conclusion that if such sources had been checked the fact of the theft would most certainly have been discovered Under the notice pleading standard of the Federal Rules of Civil Procedure, the complaint and cross-complaint adequately state a cause of action. Consequently, the motions to strike will be denied.

In summary, Rodman's motions for summary judgment as to Count V of the Miriani complaint and the Cross-Complaint of Southeast, as well as the motions to strike those same counts, must be denied.