COLIN et al.
v.
**CENTRAL PENN NATIONAL BANK et al.**

Civ. A. No. 74–1601.

United States District Court,
E. D. Pennsylvania.

Nov. 17, 1975.

Andrew C. Hecker, Jr., Philadelphia, Pa., for plaintiffs.

R. M. Shusterman, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

In this diversity action, plaintiffs charge defendants with tortious conversion of certain negotiable debentures of the American & Foreign Power Company, Inc. Defendant Central Penn National Bank (Central Penn) took the debentures in bearer form as collateral for two loans to defendants Weiss and Consolidated Millworks, Inc., totalling $60,000 in November, 1972. Defendant Central Penn cross-claimed against Weiss and Consolidated for the unpaid principal balance, interest and fees due under the loans and a default judgment has been entered against Weiss and Consolidated in the amount of $77,492.98 with interest and costs. In addition, a default judgment has been recorded against Weiss and Consolidated in favor of plaintiffs. Presently before the Court is Central Penn's motion for summary judgment.

Based on the pleadings, depositions, answers to interrogatories and affida-

vits of record, we conclude that there is no genuine issue as to any material fact and that defendant Central Penn is entitled to judgment as a matter of law, Rule 56(c), F.R.Civ.P.

*Plaintiff's Claim*

On April 18, 1972, 82 American & Foreign Power Company, Inc. 5% gold debenture bonds due 2030 and 88 American & Foreign Power Company, Inc. 4.8% debenture bonds due 1987 belonging to plaintiffs were stolen from plaintiffs' messenger in New York City. Plaintiffs subsequently discovered that their debentures were in the possession of defendant Central Penn, after Central Penn had unsuccessfully attempted to sell, transfer or register the debentures, having been informed by the transfer agent that a stop order had been received and was being honored. Defendant Central Penn's attempt to negotiate the bonds occurred after Weiss and Consolidated defaulted on the loan.

*Defendants' Motion for Summary Judgment*

Central Penn argues that the debentures are negotiable investment securities under Article 8 of the Uniform Commercial Code, 12A P.S. § 8–102 *et seq*. Central Penn claims that it took the debentures as collateral for the loans to Weiss and Consolidated, for value, in good faith and without notice of any adverse claim, thereby acquiring the status of a *bona fide* purchaser which under Article 8, 12A P.S. § 8–301, entitles it to the debentures free and clear of any adverse claim, including plaintiffs' present claim as the true owners. Plaintiffs argue that Central Penn must be charged with notice of plaintiffs' claim because of the circumstances under which the loans to defendants Weiss and Consolidated were made in November, 1972. Plaintiffs contend, in addition, that the case is not an appropriate one for summary disposition as there are outstanding crucial factual disputes which require a trial.

*The Loans and Pledges*

Central Penn received the debentures under the following circumstances: defendant Weiss called L. Charles Edwards, a loan officer of defendant, in early November, 1972. He told Edwards that a Mr. Raymond Bopp had recommended Central Penn for the loan Weiss wanted in connection with his newly acquired corporation, Consolidated Millwork, Inc. Weiss, as principal shareholder of Consolidated, would use the money to purchase Canadian Lumber for retail and for fabrication. Edwards then ordered a Dun & Bradstreet report on the corporation.

At a subsequent interview, Weiss presented a September 1, 1972 balance sheet of Consolidated Millwork, Inc., but Edwards refused to make the loan on that basis. Weiss informed him that he could collateralize the loan with securities. Edwards was agreeable provided the securities were marketable and another meeting was arranged.

In the meantime, Edwards discovered that Weiss had opened an account in August, 1972, with Lincoln National Bank which averaged a moderate four-figure balance and that a secured commercial loan to Consolidated in a low five-figure amount was outstanding. In an unrelated telephone conversation, Bopp, a Central Penn customer, stated that he knew Weiss, "who had been a Philadelphian for quite some time and is quite a good fellow", or words to that effect. In addition, Edwards' check with Central Penn's securities department revealed that the bank had no notification that the American Foreign & Power Company, Inc. debentures were stolen. Edwards received the Dun & Bradstreet report on Consolidated and checked Moody's Industrial Manual for the debenture ratings. On the basis of that information, he concluded that the bank could advance funds up to 75% of the present market value of the debentures.

At their meeting on November 14, 1972, the bank advanced Weiss $25,000

taking in return a hypothecation agreement for 70 $1000 American Foreign & Power Co. Inc. 5% bonds due 2030. Subsequently, on November 27, 1972, another $35,000 was ·advanced, collateralized by 12 more 5% debentures and 88 $1000 American Foreign & Power Co. Inc. 4.8% debentures due 1987. Prior to the second advance, Edwards did no further checking on the validity of Weiss' ownership.

*Notice*

Plaintiffs argue that defendant Central Penn had "notice" of the adverse claim of ownership when it took the debentures as collateral from Weiss. As such, Central Penn never acquired the status of a *bona fide* purchaser for value without notice of any adverse claims. "Notice" is defined in 12A P.S. § 1–201(25) as follows:

"(25) A person has 'notice' of a fact when

(a) he has actual 'notice' of it; or

(b) he has received a notice or notification of it; or

(c) *from all the facts and circumstances known to him at the time in question he has reason to know that it exists.*

* * * ". (Emphasis added)

Plaintiffs contend that "from all the facts and circumstances" at the relevant time, Central Penn was placed on constructive notice of the adverse claim.[1] Among the pertinent facts and· circumstances, the following are alleged to constitute "constructive notice":

1. Central Penn failed to require proof of Weiss' ownership of the debentures and relied solely on Weiss' statements;

2. Central Penn failed to check with the transfer agent, issuer, or any government agency (FBI, IRS, etc.) to verify that the debentures were not stolen securities;

3. Defendants Weiss and Consolidated Millwork were strangers to the bank, yet Central Penn failed to check Weiss' financial condition or reputation and did not, in fact, rely on the balance sheet for Consolidated;

4. Interest coupons, due in September 1972, were still attached to several of the debentures when they were presented to Central Penn;

5. The amounts of the ·debentures tendered had no real relationship to the amount of the loan;

6. Central Penn never inspected the premises of Consolidated or ascertained the use to which the first $25,000 loan was applied; and

7. . Central Penn did not check on general reputation of defendant Weiss and relied on Bopp's statement which amounted to a "damning with faint praise".

Plaintiffs argue that Central Penn, a commercially sophisticated lender, had a duty to make a reasonable investigation to determine the existence of adverse claims on the investment securities pledged as collateral, and its failure to discharge that duty placed it on notice ·of any adverse claim which the investigation would have revealed. In support of this proposition, plaintiffs cite *Miriani v. Rodman and Renshaw, Inc.*, 358 F.Supp. 1011 (N.D.Ill.1973); *Brown v. Rosetti* (N.Y.Supreme Court), 66 Misc.2d 239, 319 N.Y.S.2d 1001 (1971) and *Hollywood Nat. Bank v. International Bus. Mach. Corp.*, 38 Cal. App.3d 607, 113 Cal.Rptr. 494 (1974).

The crucial inquiry here must be focused on what Edwards actually knew at the time he made the loans in November, 1972. Edwards testified that he took precautions because Weiss and Consolidated Millwork, Inc. were strangers to Central Penn. (Dep. 37, 39–40). Moreover, he did not rely on Bopp's statement, the balance sheet of Consoli-

---

[1]. "Notice" of the adverse claim would reduce Central Penn's rights to those of Weiss from whom the debentures were taken. 12A P.S.

§ 8–301. Neither party has argued in this motion that Weiss was a bona fide purchaser of the debentures.

dated, or the Dun & Bradstreet report. He checked with the Securities Department of Central Penn to assure that the bank had not received a notification that the securities were stolen. Weiss stated his ownership claim satisfactorily or at least plausibly, and also explained his reason for not clipping the interest coupons which matured in September. (Dep. 40, 56) To Edwards, the transaction progressed uneventfully and appeared perfectly regular and legitimate.

Although plaintiffs' position seems to be that Central Penn had a duty to investigate under these circumstances, there was nothing irregular in the transaction which served to arouse Edward's suspicions. Obviously, a thorough investigation might have revealed the suspicious character of Weiss's possession; but defendant had no investigative duty to discharge. Edwards had no reason to know from all the facts and circumstances at the time in question that Weiss did not own the debentures.

Under the Pennsylvania version of the Uniform Commercial Code, 12A P.S. § 8–304, a purchaser is charged with notice of adverse claims as a matter of law under certain circumstances. None of these circumstances are present in the case *sub judice*. Comment 1 to § 8–304 states, however,

"* * * This section deals only with notice and presents three specific situations in which a purchaser is charged with notice of adverse claims as a matter of law. The listing is not exhaustive and does not exclude other situations in which the trier of the facts may determine that similar notice has been given. * * *

"* * * [s]uspicious characteristics of the transaction may give a purchaser (particularly a commercially sophisticated purchaser such as a broker) 'reason to know'. *U. S. F. & G. Co. v. Goetz*, 285 N.Y. 74, 32 N.E.2d 798 (1941); *Morris v. Muir*, 111 Misc. 739, 181 N.Y.S. 913 (1920)."

In *U. S. F. & G. Co. v. Goetz, supra*, a broker's claim to *bona fide* purchaser status in connection with the purchase of bonds from a "new account" was deemed a jury question. Serial numbers on the bonds in question were "unusually high" for that series, but otherwise the bonds appeared to be regular on their face. The bonds, in fact, were stolen. In trading with this new account, the broker negligently failed to follow the prescribed rules of the New York Stock Exchange. The Court held that the broker's negligence and the "unusually high" serial numbers on the bonds constituted enough evidence to justify a jury's resolution of the issue of constructive notice.

Here no evidence has been produced to show that any "suspicious circumstances" existed. Moreover, no facial irregularities were apparent on the debentures in question. Although plaintiffs argue that the failure to clip the interest coupons due in September should have aroused suspicion, that alone is not enough in light of Weiss' explanation to defendant that he was prepared to wait until the end of the year to apply the proceeds to reduce the interest on the loan. (Edwards' dep. 41–42) The fact that interest coupons have not been clipped is not *per se* sufficient to create a "reason to know" or constructive notice. See *Georgia Granite R. Co. v. Miller*, 114 Ga. 665, 87 S.E. 897 (1916); *see also In re Stroudsburg Security Trust Co.*, 145 Pa.Super. 44, 20 A.2d 890 (1941).

The fact that Weiss and Consolidated were total strangers to Central Penn is not sufficient to constitute "suspicious circumstances". In *Gutekunst v. Continental Insurance Co.*, 486 F.2d 194 (2d Cir. 1973), the failure of the bank pledgee to investigate the borrower or his right to negotiate the bonds did not show "bad faith" on the bank's part, even though the borrower was a total stranger.[2] "* * * [I]t is not ignor-

2. Plaintiffs' attempt to distinguish this case on the ground that New York law differs from that of Pennsylvania must fail. The New York version of Article 8, Uniform

ance, but guilty knowledge or conduct that can be equated with guilty knowledge, that can rise to bad faith." 486 F.2d 196. In *Otten v. Marasco*, 235 F. Supp. 794 (S.D.N.Y.), *aff'd*, 353 F.2d 563 (2d Cir. 1965) constructive notice was found where bonds in the name of a third party were pledged without authority and the pledgee claiming *bona fide* purchaser status had at one point temporarily returned the bonds to the pledgor for questionable "audit" purposes. The Court held that the pledgee's failure to investigate under those circumstances constituted "willful ignorance".

■ In *First National Bank v. Goldberg*, 340 Pa. 337, 17 A.2d 377 (1974)[3], defendants acted without bad faith in the sale of stolen negotiable bearer bonds. Finding nothing apparently irregular in the transactions, the Court held:

> "Perhaps the defendants should have been more circumspect in handling the bonds, and they might have made a more thorough examination into the identity and reliability of Gross, but *with negotiable instruments the test is not care but good faith*. To defeat the rights of one dealing in negotiable securities it is *not enough* to show that he took them under circumstances which ought to excite the suspicion of a prudent man and cause him to make inquiry, but that he had actual knowledge of an infirmity or defect, or of such facts that his failure to make further inquiry would indicate a *deliberate desire on his part to evade knowledge because of a belief or fear that investigation would disclose a vice in the transaction*." 340 Pa. 340, 17 A.2d 378. (Emphasis added)

Commercial Code, does have a section, 8–304 (3), which does not appear in Pennsylvania's Code. It states:

"(3) Except as provided in this section, to constitute notice of an adverse claim or defense, the purchaser must have knowledge of the claim or defense or knowledge of such facts that his action in taking the security amounts to bad faith."

Plaintiffs' contention that the defendant owed a duty to investigate Weiss' claim to ownership without demonstrating any circumstances or facts which gave Edwards reason to know must fail. As stated in *Goldberg*, the test is not a reasonable-man standard.

Both *Miriani, supra,* and *Brown, supra,* cited by plaintiffs are readily distinguishable. In each case, the nature of the transaction was highly unusual or odd. Moreover, *Hollywood, supra,* does not support plaintiffs' position. There, the pledgee bank was involved in a "hurry up" transaction involving numerous participants. The Bank claimed *bona fide* purchaser status as pledgee of stolen stock certificates. The evidence showed that bank's loan officer was contacted on the telephone by an agent of the possessor of the certificates. Two days later, a $25,000 loan was made with the stock as collateral even though the loan officer never saw the principal, and had discovered that the agent's credit rating was poor. Moreover, he made no effort to verify the claimed ownership of the certificate, ignoring not only the fact that the certificate had been endorsed "execution guaranteed" at least two years earlier but also the fact that it was in the name of an unrelated third party. The Court held that the bank had "notice" of the adverse claim, stating:

> "The circumstances of this case do not involve 'mere suspicion'. Rather [the loan officer's] unwillingness to make any inquiries—other than the last minute phone call to the credit bureau—indicate a studied refusal to make inquiries that were likely to 'disclose a vice or defect * * *' in a rush transaction that reeked of

However, as appears in the discussion, *infra*, Pennylvania law does not materially differ.

3. On the issue presented in this case, the law of New York and Pennsylvania dictate the same result. Accordingly, we need not resolve a conflict of laws issue.

chicanery." 38 Cal.App.3d 607, 615–616, 113 Cal.Rptr. 494, 498.

*Conclusion*

The undisputed facts in this case show that Edwards acted in good faith in collateralizing the debentures presented by Weiss at the time in question. Moreover, the entire transaction was free from the taint of suspicious circumstances sufficient to constitute constructive notice of the adverse claim or to create a duty on the part of defendant Central Penn to investigate the nature and quality of Weiss' possession. Accordingly, we conclude that defendant Central Penn is entitled to summary judgment on plaintiffs' allegations of conversion. An appropriate order will be entered.