**BUTCHER & SINGER, INC., a Pennsylvania corporation, Fronefield Crawford, Wilfred Coleman and L.W. Coleman, Plaintiffs,**

v.

**Lloyd J. KELLAM, Defendant.**

**Civ. A. No. 83–505 CMW.**

United States District Court,
D. Delaware.

Dec. 4, 1985.

David J. Ferry, Jr. of Trzuskowski, Kipp, Kelleher & Pearce, Wilmington, Del., (Edward C. Mengel, Jr. of While & Williams, Philadelphia, Pa., of counsel), for plaintiff, Butcher & Singer, Inc.

Richard W. Pell and Anne L. Naczi of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., for plaintiffs-intervenors, Fronefield Crawford, Wilfred Coleman and L.W. Coleman.

Victor F. Battaglia and Pamela S. Tikellis of Biggs & Battaglia, Wilmington, Del., for defendant.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

The Court, by its own motion, has raised the issue of whether it has subject matter jurisdiction in this diversity case, as a result of the intervention of Fronefield Crawford, Wilfred Coleman, and L.W. Coleman, Trustees of the Anita C. Robb Trust (the

"Trustees"). All of the Trustees and the plaintiff, Butcher & Singer ("B & S"), are citizens of Pennsylvania; defendant, Lloyd Kellam, is a citizen of Virginia. Although the Trustees and B & S have aligned themselves as plaintiffs, their interests may be sufficiently adverse such that one of them should be realigned as a defendant, thereby destroying diversity.

## I. THE FACTS

In April, 1983, defendant Kellam contacted the Wilmington, Delaware, office of B & S to inquire whether it would handle the sale of bonds belonging either to Kellam or to an undisclosed third party.[1] Kellam had been a customer of the B & S Wilmington office for twelve years. B & S agreed to handle the sale and, in several transactions during April and May 1983, delivered to Kellam a total of $83,668.01 as proceeds from the sale of the bonds.

The bonds involved in this transaction originally were owned by the Anita C. Robb Trust and were stolen from the office of Trustee Crawford on January 27, 1983. After learning that the bonds were stolen, B & S repurchased them from the third parties to whom they were sold and demanded that Kellam reimburse it for losses suffered in the repurchase. When Kellam refused to pay reimbursement, B & S filed suit. B & S apparently sought damages under the theory that Kellam had breached certain warranties under the Uniform Commercial Code, Del.Code Ann. tit. 6, § 8–306(2) (Supp.1984). Kellam filed counterclaims which alleged that B & S was negligent in advising him about the saleability of the bonds, had breached its fiduciary duty to a customer, and was estopped from relying on the fact that the bonds were stolen.

Kellam moved for summary judgment on the grounds that B & S had no obligation to repurchase the bonds from its customers and thus had suffered no legally cognizable injury. Kellam's brief raised the possibility that B & S would receive a double recovery if it retained possession of the repurchased bonds and also was able to assert a claim for damages for the entire value of the bonds. The Court then convened a conference to solicit the views of the parties regarding what damages, if any, B & S would be entitled to recover if the Court determined that B & S were the lawful owner of the bonds.[2] In other words, if B & S were a bona fide purchaser of the bonds, it would have no obligation to return the bonds to their original owner and, moreover, it would have the legal right to compel payment of principal and interest in accordance with the terms of the bonds. In response to the Court's concerns, the parties decided to solicit the participation of the original owner of the bonds in the lawsuit.

The Trustees moved to intervene as plaintiffs in February 1985. The Trustees' motion to intervene did not state whether they sought to intervene of right or permissively, and the Court's order allowing intervention also did not address the Trustees' status as intervenors. *See* Motion to Intervene and Order Allowing Intervention, Docket No. 60. In conjunction with the order permitting intervention, the Court sent a letter to the parties that expressly reserved judgment on the questions of whether the parties were aligned properly and whether the Court would continue to have subject matter jurisdiction if the parties were realigned. *See* Letter from Court to Counsel (Mar. 5, 1985).

After permitting limited discovery by Kellam against the Trustees, the Court, sua sponte, moved to consider the issue of its subject matter jurisdiction. Prior to briefing, the Court requested additional information from B & S about its asserted

---

1. The parties are in dispute whether Kellam was the owner of the bonds. The Court need not decide that question for the purposes of this Opinion.

2. Such damages presumably would be based on the theory that B & S repurchased the bonds out of some legal obligation as a broker or from efforts to minimize any commercial injury to its business.

interest in the bonds.[3] B & S submitted a verified response that disclaimed any interest in the bonds *but only if* it successfully recovered any losses from Kellam. The obvious inference was that B & S was asserting a conditional interest in the bonds, in the event that it could not recover damages from Kellam. In fact, B & S expressly reserved the right to assert an interest in the bonds. *See* Butcher & Singer's Verified Response to Directed Question, Docket No. 68.

Based on the response of B & S, the parties were to brief three questions:

1. In light of *Indianapolis v. Chase National Bank*, 314 U.S. 63 [62 S.Ct. 15, 86 L.Ed. 47] (1941), does complete diversity exist, i.e., do the respective interests of plaintiff Butcher & Singer and plaintiff Trustees in the bonds require the Court to realign them as adverse parties?

2. Assuming *arguendo* the Court requires realignment of the parties such that complete diversity is defeated, are the plaintiff Trustees dispensable parties whom the Court should dismiss to preserve diversity jurisdiction? [NOTE: Although the decision *Provident Trademens Bank & Trust Co. v. Patterson*, 390 U.S. 102 [88 S.Ct. 733, 19 L.Ed.2d 936] (1968) addressed this issue in the context of joinder, it may also be applicable to situations involving intervention. Accordingly, I hope the parties' briefs address the relevance of the *Provident* case in this context].

3. Assuming *arguendo* that the Court determines it is necessary to dismiss the plaintiff Butcher & Singer's claims for lack of complete diversity, is the Court also required to dismiss defendant Kellam's counterclaims against Butcher & Singer?

Letter from Court to Counsel (Apr. 26, 1985).

**3.** The Court directed B & S to answer the following questions:

1. Will Butcher & Singer surrender any interest it has in the bonds to the plaintiff Trustees even if the Court determines that Butcher & Singer is without any legal obligation to do so?

Upon review of the submissions of the parties, the Court has determined that the current alignment of the parties, with B & S and the Trustees as plaintiffs, is improper, and that the Court will realign B & S as a defendant. This destroys complete diversity. Because the Court has also determined that the Trustees are an indispensable party to this action, it must dismiss this action for lack of subject matter jurisdiction.

## II.  DISCUSSION

### A.  General Principles

The sole basis for the Court's jurisdiction over this matter is diversity of citizenship. Under the relevant statute, 28 U.S.C. § 1332, complete diversity of citizenship must exist between the parties to invoke the diversity jurisdiction of the Court. That is, all parties on one side of the controversy must be citizens of different states from all parties on the other side. *E.g., Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). The parties cannot confer jurisdiction on a federal court by their own determination of who are plaintiffs and who are defendants. Instead, the Court has the duty to "look beyond the pleadings and arrange the parties according to their sides in the dispute." *Dawson v. Columbia Trust Co.*, 197 U.S. 178, 180, 25 S.Ct. 420, 421, 49 L.Ed. 713 (1905). The parties must be arranged by ascertaining the "principle purpose of the suit" and the "primary and controlling matter in dispute." *Indianapolis v. Chase National Bank*, 314 U.S. 63, 69, 62 S.Ct. 15, 16, 86 L.Ed. 47 (1941). Where there are multiple parties to a lawsuit, as in the current litigation, the Court can realign the parties according to their true interests. If the requisite complete diversity is lacking after realignment, the Court must dismiss the case for lack of jurisdiction. *See, e.g., id.*

2. If the first question is answered in the affirmative, then why has Butcher & Singer not already assigned any and all interest it has in the bonds to the plaintiff Trustees?
*See* Letter from Court to Counsel (Apr. 26, 1985).

■ The status of a proposed intervenor affects the Court's ability to retain subject matter jurisdiction over a diversity case. A party entering through permissive intervention must establish a jurisdictional basis independent of the Court's jurisdiction over the claims in the original action. *See, e.g., Beach v. KDI Corp.*, 490 F.2d 1312 (3d Cir.1974); *Pierson v. United States*, 71 F.R.D. 75, 81 (D.Del.1976). If the proposed intervenor, when properly aligned, destroys diversity, then the Court cannot allow the intervenor to enter. *Jet Traders Inv. Corp. v. Tekair, Ltd.*, 89 F.R.D. 560, 566–67 (D.Del.1981); *Coca-Cola Bottling Co. of Elizabethtown, Inc. v. Coca-Cola Co.*, 98 F.R.D. 254, 280 (D.Del.1983); *but see, e.g., Telefest, Inc. v. VU–TV, Inc.*, 591 F.Supp. 1368, 1370 n. 1 (D.N.J.1984) (permissive intervention of non-diverse, non-indispensable party does not oust court's jurisdiction).

■ If the intervenor enters by intervention of right, however, it need not establish an independent source of jurisdiction because the court has ancillary jurisdiction over its claims. *Jet Traders*, 89 F.R.D. at 567 n. 31; *Pierson*, 71 F.R.D. at 81. As a result, the entry of non-diverse intervenor of right usually does not divest the court of subject matter jurisdiction. *See, e.g., Omni Dev., Inc. v. Porter*, 459 F.Supp. 930 (S.D.Fla.1978). However, when a non-diverse party intervening of right is indispensable within the meaning of Fed.R.Civ.P. 19, the court must dismiss the entire suit for lack of jurisdiction. *See, e.g., Carlton v. BAWW, Inc.*, 751 F.2d 781 (5th Cir.1985); *CRI, Inc. v. Watson*, 608 F.2d 1137 (8th Cir.1979).[4] In the present case, a determination that the proper alignment of B & S and the Trustees destroys complete diversity, coupled with a finding that the Trustees are indispensable parties, would require this Court to dismiss the action for want of subject matter jurisdiction.

## B.  Alignment

The present controversy involves a dispute regarding liability for damages arising from the sale and purchase of stolen bonds. On the face of the complaint, the consideration paid to Kellam for the bonds appears to be the measure of damages alleged by B & S. The existence of the primary injury arising from the sale, however, turns on a determination of who legally owns the bonds. If B & S is legally entitled to the bonds, then it may not have suffered any damages. The Court must address the question of alignment from this perspective.

In *Indianapolis v. Chase National Bank*, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941), a divided Supreme Court determined that the validity of a lease between two defendants was the "primary and controlling matter is dispute" in a suit ostensibly brought to recover overdue interest. The Court found it necessary to realign the parties, a step which defeated federal jurisdiction in the case. Just as the validity of the lease was primary and controlling in *Chase National Bank*, a determination of ownership of the bonds may be primary and controlling here.

The intervening Trustees have aligned themselves with plaintiff B & S. Both claim that the principle purpose of the lawsuit is to recover damages from defendant Kellam for his participation in the sale of the stolen bonds. They argue that the issue of Kellam's liability is severable from the issue of damages and that the ownership issue is secondary because it only becomes important if and when Kellam's liability is established. Under this view, complete diversity exists, because citizens of one state, Pennsylvania, are suing a citizen of another state, Virginia.

Kellam, on the other hand, claims that the lawsuit turns on the current ownership of the stolen bonds, because the question

**4.** Strictly speaking, Rule 19 deals with joinder, not intervention. However, courts have utilized the four factor test of indispensability outlined in the rule to determine how to proceed when a party who destroys diversity seeks to intervene of right. *See CRI, Inc. v. Watson*, 608 F.2d at 1140; *Carlton*, 751 F.2d at 785.

of who owns the bonds is determinative of whether B & S has suffered any injury. Because the Trustees have asked the Court to declare them owners of the bonds and B & S also may assert an ownership interest in the bonds, Kellam argues that the interests of B & S and the Trustees are adverse.[5] Under Kellam's theory, the proper alignment of the parties would have the Trustees as plaintiffs, B & S as a defendant-third-party plaintiff, and Kellam as third-party defendant and counter-claimant against B & S. This alignment, of course, would destroy diversity.

The question of which of these theories, if either, captures the "principle purpose of the suit" is difficult. The Court could find no case precisely on point. Upon careful consideration of the positions of the parties and the legal theories involved in the case, the Court has concluded that the proper alignment of parties places the Trustees as sole plaintiff and B & S and Kellam as defendants.

First, in contrast to what B & S and the Trustees argue, the question of B & S's possible ownership of the bonds is present in the determination of Kellam's liability to B & S on the warranty claim. The obligation of B & S to return the bonds depends on whether B & S can be considered a bona fide purchaser (BFP). Under § 8–302 of the Uniform Commercial Code, Del. Code Ann. tit. 6, § 8–302, the BFP of a security acquires his interest in the security free of any adverse claim. Section 8–302(1) defines a BFP as a "a purchaser for value in good faith and without notice of any adverse claim." This definition requires the following four elements: (1) a purchaser, (2) value, (3) good faith, and (4) no notice of any adverse claim. *Id.; Insurance Co. of North America v. United States*, 561 F.Supp. 106, 112 (E.D.Pa.1983).

The parties here do not (and cannot) dispute that B & S was a "purchaser" of the bonds and gave "value" for them. *See, e.g., Insurance Co. of North America*, 561

F.Supp. at 113. Two elements of B & S's entitlement to BFP status have already been proven. The issue of B & S's ownership thus will turn on whether B & S acted in good faith and had any notice of adverse claims.

These questions also are relevant to the merits of B & S's warranty claim and, more particularly, Kellam's affirmative defenses. Successful proof by B & S of good faith and lack of notice of adverse claims, in rebutting Kellam's affirmative defenses, also will serve to defeat the Trustees' claim of ownership. As a result, resolution of the factual issues regarding ownership must logically precede a determination of liability for breach of warranty. The issue of ownership, in which the Trustees and B & S have adverse interests, thus appears primary and controlling in the lawsuit.

Secondly (and similarly), Kellam argues in his counterclaim against B & S that B & S was negligent in investigating the saleability of the bonds and in advising Kellam about the transaction. Resolution of this counterclaim will require inquiry into what information Kellam gave B & S about how he came into contact with the bonds and whether B & S complied with reasonable commercial standards in determining if the bonds were valid. *Cf. Miriani v. Rodman & Renshaw, Inc.*, 358 F.Supp. 1011 (N.D. Ill.1973) (broker could be held liable to purchaser of stolen bonds and to original owner of bonds for negligence in verifying saleability of bonds). As a result, Kellam's counterclaim also implicates the issues of whether B & S had notice of any adverse claim to the bonds and whether it acted in good faith in the transaction. Resolution of Kellam's counterclaim thus could establish the status of B & S as a BFP, regardless of whether B & S claims such status at this point. If B & S has BFP status, then it would be entitled to the bonds free of any adverse claims. The issue of ownership once again appears primary and controlling.

---

**5.** Indeed, B & S and the Trustees admit that they have adverse interests in the title and ownership of the bonds in the event that B & S does not

recover its losses from Kellam. *See* Butcher & Singer's Opening Brief at 11; Intervenors' Answering Brief at 10–11, Docket Nos. 70, 71.

Finally, the ambivalent position which B & S has taken regarding the question of who owns the bonds shows the adversity between the Trustees and it. The Trustees are concerned almost exclusively with the issue of ownership. B & S, on the other hand, has tried to hedge its bets on the ownership issue by arguing, with respect to Kellam, that it is not the rightful owner, while refusing to renounce totally any claim to the bonds in the event it cannot recover from Kellam. Unfortunately, B & S cannot play possum until after the issue of damages is resolved with respect to Kellam.

B & S, of course, could argue that the Trustees are the rightful owners of the bonds.[6] If B & S made such an argument without any qualification, and in the form of a stipulation of facts that would support such a finding, then there would be no adversity betwen B & S and the Trustees. B & S instead has insisted on maintaining alternative pleading positions: either it owns the bonds or Kellam is required to reimburse it for their cost.

While a party is permitted to plead alternative theories, B & S's position is more problematic. It seeks a determination of the latter alternative prior to a determination of the former. This simply is not possible. Because B & S insists on maintaining alternative positions, the Court must look, for the purpose of determining its jurisdiction, to the first of the alternative positions (that is, the alternative which is unconditional) to be resolved. In this case, the issue of ownership clearly must be resolved first. Therefore, the adverse interests of B & S and the Trustees in the

title to the bonds must be regarded as primary and controlling.

■ In summary, the issue of who owns the bonds is primary and controlling in this lawsuit. The adverse interests of B & S and the Trustees on this issue require that they be aligned on opposite sides.

The current situation is analogous to that faced by the court in *Jet Traders Inv. Corp. v. Tekair, Ltd.*, 89 F.R.D. 560 (D.Del. 1981). In that case, an alien corporation sought to intervene in an action brought by a Florida corporation against another alien corporation and other defendants. To avoid the lack of diversity that would occur if it intervened as a plaintiff (aliens would have been on both sides of the action), the intervenor asked to be aligned as a defendant and contended that its interests were more closely aligned with those of the existing defendants. The Court examined the similarity of interests between the intervenor and the existing parties and determined that the intervenor had more interests adverse to each existing party than it had interests in common with any of them. As a result, the court concluded that, "if the parties were realigned according to their real interests, [the intervenor] would be the sole plaintiff. In such a case, there would be no diversity of citizenship...." 89 F.R.D. at 567.

In the current matter, the Trustees and B & S share some interests. The Trustees share with B & S the interest in proving that Kellam acted wrongfully in arranging the sale of the bonds for the purpose of establishing their respective causes of action based on breach of warranty and conversion.[7] To the extent that B & S abides by its promise to disclaim any interest in the bonds if it recovers its losses from

---

6. The promise by B & S to surrender any interest in the bonds to the Trustees if it is successful against Kellam is simply beside the point. Such a promise seems to stem more from a desire to minimize any adversity between the putative plaintiffs in order to retain a federal forum than from any magnaminity on the part of B & S. Regardless of its motivation, however, the conditional nature of the promise serves only to highlight the underlying adversity between the two parties rather than to dispel the existence of any adversity.

7. The complaint filed by the Trustees does not characterize explicitly the nature of their cause of action against Kellam. The Court notes that the allegations might support a common law conversion claim, as well as a claim based on U.C.C. § 8–315 (allowing action by any person against whom transfer of security is "wrongful"). *See* Complaint of the Intervenors, Docket No. 61.

Kellam, the Trustees share B & S's interest in establishing Kellam's liability.

On the other hand, as discussed above, the Trustees have interests adverse to B & S regarding the title and ownership of the bonds. In fact, the Trustees share with Kellam an interest in proving B & S's negligence in relation to the transaction, to the extent that such negligence regarding notice and investigation of adverse claims might defeat B & S's status as a BFP of the stolen bonds as well as preclude any recovery by B & S against Kellam. *See, e.g., Insurance Co. of North America,* 561 F.Supp. at 114; *Oscar Gruss & Son v. First State Bank of Eldorado,* 582 F.2d 424 (7th Cir.1978). Although there is much animosity between B & S and Kellam, it seems clear that the claims and counterclaims between the two relate to allocating between themselves liability arising from a wrong suffered by a third party. Both B & S and Kellam could be liable to the Trustees under U.C.C. § 8-315 and the common law of conversion. The two would have no dispute if none of their actions were wrongful vis-a-vis the Trustees. The Court concludes that the Trustees have more interests adverse to B & S and Kellam than they have in common with either. Therefore, the correct alignment of the parties places the Trustees as sole plaintiff against B & S and Kellam as defendants. *Cf. U.S. Fidelity & Guar. Co. v. Welco Constr. & Utils. Co.,* 463 F.Supp. 510 (D.S. C.1978) (basic controversy arose from cross-claim in which plaintiff surety actually aligned with defendant construction company).[8]

*C. Indispensability*

■ This alignment of parties means that complete diversity does not exist. The next question the Court must face is the Trustees' status as intervenors. As noted above, the Court did not rule explicitly on whether the Trustees were intervening permissively or of right at the time it allowed intervention. If the Trustees are intervening permissively, then the lack of diversity created by their presence requires the Court to dismiss them from the action. If they are indispensable parties intervening of right, then the Court must dismiss the entire action. Fed.R.Civ.P. 19(b), which addresses the question of indispensability, lists four factors which a court should consider in determining whether a party is indispensable:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

In *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), the U.S. Supreme Court found that Rule 19(b) suggests four "interests" that a court must examine to determine whether it should proceed in the absence of a party. Those interests are: (1) whether a satisfactory alternative forum is available to the plaintiff; (2) whether the defendant may face multiple litigation, inconsistent relief, or sole responsibility for a liability he shares with another; (3) whether the interests of

---

**8.** The Court takes note of the fact that it could find no case with facts similar to the current situation in which the original owner of stolen bonds was aligned on the same side of a lawsuit with a broker/dealer involved in a subsequent transaction with the bonds. *See, e.g., New Jersey Bank, N.A. v. Bradford Securities Operations, Inc.,* 690 F.2d 339 (3d Cir.1982) (bank which accepted stolen bonds as security for loan sued original owner of bonds); *Fidelity & Casualty Co. of New York v. Key Biscayne Bank,* 501 F.2d 1322 (5th Cir.1974) (original owner of stolen stock sued bank which accepted stock as loan collateral; bank sued, as third-party defendant, man who presented stock to bank); *Morgan Guaranty Trust Co. v. New England Merchants Nat'l. Bank,* 438 F.Supp. 97 (D.Mass.1977) (original owner of stolen Treasury bills sued bank which negotiated stolen bills; defendant bank sought indemnity in third-party action from bank for whom it served as correspondent in transaction).

the absent party may be impaired by the court's decision; and (4) whether a judgment rendered in the absence of the party will provide a complete, consistent, and efficient settlement of the controversy. 390 U.S. at 109–11, 88 S.Ct. at 737–39. The court also should consider the possibility of shaping any relief to accommodate these four interests and thus avoid dismissing the case. *Id.* at 111–12, 88 S.Ct. at 738–39.

■■■ Assessing the current case in light of these factors, the Court concludes that the Trustees are an indispensable party to this lawsuit. First, at least one alternative forum exists for B & S to present its claims; the Delaware state courts presumably could obtain jurisdiction over the case and all the parties.[9] As for the second interest, defendant Kellam does face the possibility of multiple litigation and inconsistent relief. Regardless of whether B & S is successful in its suit against Kellam, Kellam may have to defend a second suit brought by the Trustees relating to the sale of the stolen bonds. In addition, if both the Trustees and B & S are successful in their claims, Kellam might have to compensate both parties for the value of the bonds. This is surely an inconsistent result.

Regarding the third interest, the discussion of the alignment issue above pointed out how the status of B & S as a BFP of the bonds is before the Court. A determination by this Court that B & S was a BFP of the bonds could impair, as a practical matter, the Trustees' ability to protect their interest in the subject matter. The stare decisis effect of such a determination constitutes sufficient impairment to meet the rule's requirement because, if the Trustees are not parties in the suit between B & S and Kellam, they "might be forced to present identical issues of law and fact to the same court in a later action." *Jet Traders*, 89 F.R.D. at 569; *see CRI, Inc. v. Watson*, 608 F.2d 1137, 1140. (8th Cir. 1979).[10] In particular, an action by the Trustees against Kellam under U.C.C. § 8–315 could be brought in federal court in Delaware and would involve many of the same legal and factual issues involved in the claim of B & S against Kellam under U.C.C. § 8–306.

The next interest to be considered is whether a judgment rendered without the Trustees will provide a complete and efficient settlement of the controversy. A decision by this Court in the absence of the Trustees will by no means completely settle this matter. As mentioned above, the Trustees may bring a second suit against Kellam because of his participation in the sale of the bonds. They also could sue B & S on the same grounds. B & S has made it clear that it will institute proceedings against the Trustees to validate its title to the bond if it is unsuccessful in winning compensation for its losses here. With all these additional lawsuits possible, it is obvious that resolution of all these matters in one lawsuit would be much more efficient, and would settle the controversy more completely.

The Court finally must consider the possibility of tailoring the relief it grants to minimize prejudice to the absent party and

---

9. Two possible obstacles to suit in state court—the statute of limitations and personal jurisdiction over out-of-state defendants—do not appear to pose problems here. The claims of B & S in this litigation would be governed by Del.Code Ann. tit. 10, § 8106 (1975), which provides a three-year limitations period for actions based on a statute (in this case, the U.C.C.). The transactions at issue occurred in April and May of 1983, so any state court action brought before May 1986 should be timely.

In addition, Kellam did not claim that the Court lacked personal jurisdiction over him in this action, and it is very doubtful that he could argue successfully that he falls outside the coverage of Delaware's long-arm statute, Del.Code Ann. tit. 10, § 3104 (Supp.1984). *See Wilmington Supply Co. v. Worth Plumbing & Heating, Inc.*, 505 F.Supp. 777 (D.Del.1980) (out-of-state defendant which had open-running credit account with Delaware plaintiff for at least four years had purposely availed itself of privilege of acting in Delaware and was subject to jurisdiction there).

10. *Jet Traders* dealt with the practical impairment requirement under Rule 24(a)(2) intervention of right. The requirement in relation to Rule 19 indispensability is similar. *See supra* note 4.

to avoid dismissal of the case. The Court has determined that it is impossible to tailor the relief in this case to minimize prejudice to the Trustees. The question of the ownership of the bonds, although not the immediate issue in the litigation between B & S and Kellam, "assumes such commanding importance [that] it is difficult to conceptualize a form of relief or protective provisions which would not require as a preliminary matter the determination of the question of title with all the resulting potential for prejudice." *Haas v. Jefferson Nat'l. Bank of Miami Beach*, 442 F.2d 394, 399 (5th Cir.1971) (Aldisert, J., sitting by designation).

For all the foregoing reasons, the Court concludes that the Trustees are indispensable parties to this action and that it cannot, in equity and good conscience, proceed in this action without them. Because complete diversity between the parties is lacking, the Court must dismiss this action. An order will issue in accordance with this Opinion.[11]

11. Because of the Court's resolution of this matter, the third question which the Court asked the parties to brief is moot. Kellam has stated that he will voluntarily dismiss his counterclaim against B & S without prejudice in the event that the Court dismisses B & S's claims for lack of complete diversity. *See* Defendant Kellam's Answering Brief at 18, Docket No. 72.