**JET TRADERS INVESTMENT CORPORATION, Plaintiff,**

**Transportes Aereos De Angola, Applicant for Intervention,**

v.

**TEKAIR, LTD., and Ronair, Inc., Defendants.**

Civ. A. No. 79–363.

United States District Court, D. Delaware.

March 16, 1981.

---

**562**

Linda K. Raspolich of Abrams, Anton, Robbins, Resnick, Schneider & Mager, P. A., Hollywood, Fla., for plaintiff, Jet Traders Investment Corp.

Allen M. Terrell, Jr., and Alesia Ranney-Marinelli of Richards, Layton & Finger, Wilmington, Del., and Thomas Engel and Michele K. Spike of Hale, Russell, Gray, Seaman & Birkett, New York City, of counsel, for defendants, Tekair, Ltd., and Ronair, Inc.

F. Alton Tybout of Tybout, Redfearn, Casarino & Pell, Wilmington, Del., and Michael B. Standard of Rabinowitz, Boudin, Standard, Krinsky & Lieberman, New York City, of counsel, for applicant for intervention, Transportes Aereos De Angola.

## OPINION

LATCHUM, Chief Judge.

Presently before the Court is the motion of Transportes Aereos De Angola ("TAAG") to intervene in this action which involves the circumstances surrounding the aborted sale of an aircraft of which TAAG would have been the ultimate purchaser. TAAG seeks to intervene as a matter of right under Rule 24(a)(1) and (a)(2), F.R. Civ.P., and also seeks permissive intervention under Rule 24(b)(2). All of the parties to this action oppose TAAG's motion. First, they contend that TAAG has not shown that it is entitled to intervene under any provision of Rule 24. Second, they argue that TAAG lacks standing to bring suit in the courts of the United States because it is an instrumentality of Angola, a nation which the United States does not *formally* recognize. Because the Court has

concluded reluctantly that TAAG may not intervene under Rule 24, it will not reach the second question.

In order to determine whether or not TAAG is entitled to intervene, it is necessary to examine in some detail the claims of the various parties and the intervenor, their factual allegations, and the procedural history of the action. All well-pleaded material factual allegations contained in the intervenor's complaint must be accepted as true. In addition, the Court may consider any facts alleged in the pleadings of the parties or contained in affidavits as long as they do not contradict the allegations of the proposed intervenor. *Central States, Southeast and Southwest Areas Health and Welfare Fund v. Old Security Life Insurance Co.*, 600 F.2d 671, 679 (C.A.7, 1979); *Stadin v. Union Electric Co.*, 309 F.2d 912, 917 (C.A.8, 1962), *cert. denied*, 373 U.S. 915, 83 S.Ct. 1298, 10 L.Ed.2d 415 (1963); *Clark v. Sandusky*, 205 F.2d 915 (C.A.7, 1953); *Dudley v. Southeastern Factor & Finance Corp.*, 57 F.R.D. 177, 184 (N.D.Ga.1972); *Atlantic Refining Co. v. Port Lobos Petroleum Corp.*, 280 F. 934 (D.Del.1922); 3B Moore's Federal Practice ¶ 24.14 (1980).

### I. *Factual and Procedural Background.*

TAAG is a juridical entity of the Ministry of Transport of the People's Republic of Angola, organized under the laws of that country with its principal place of business located in Luanda, Angola.[1] On May 11, 1979, TAAG entered into a written agreement ("the TAAG contract") with the plaintiff, Jet Traders Investment Corporation ("Jet Traders"), a Florida corporation with its principal place of business in Florida.[2] In the TAAG contract, Jet Traders agreed to sell and TAAG agreed to purchase for a price of $7,500,000, a Boeing 707–321F aircraft, bearing manufacturer's serial number 19375 and United States registration mark N473 RN ("the Aircraft").[3] The Aircraft

---

1. Docket Item ("D.I.") 75, ¶ 2.

2. D.I. 75, ¶ 1.

3. D.I. 75, ¶ 7. The contract, which is incorporated into the complaint is found at D.I. 75, Exhibit ("Ex.") A.

which is the subject of the TAAG contract is of unique and special value to TAAG because it is a Boeing 707 model 321F, which unlike the more common model 321C, is a "dedicated freighter," a plane that has been modified extensively to enhance its value as a cargo-carrying craft. It is also of a unique and special value to TAAG because these Boeing planes are the only type which TAAG's personnel have the training to maintain and operate and because no other similar aircraft are available.[4] The TAAG contract called for delivery of the Aircraft to TAAG by June 25, 1979,[5] and for extensive modifications to accommodate it to the maintenance needs and operational capabilities of TAAG's personnel.[6]

There appears to be no dispute that TAAG has performed all of its pre-delivery obligations under the TAAG contract, including the payment to Jet Traders of $6,550,000. As called for by the contract, this amount was made in two payments. The first payment of $750,000 was made on April 11, 1979, one month before the contract was signed and the second was made on May 11, 1979, the date upon which the contract was executed.[7]

At the time the TAAG contract was executed, Jet Traders did not hold title to the Aircraft. At all times title has been held by defendant Ronair, Inc. ("Ronair"),[8] a Delaware corporation with its principal place of business in New York.[9] On or about May 23, 1979, after the TAAG contract was signed, two other agreements were concluded with respect to the Aircraft.

Each on its face purported to be a contract for the sale of the Aircraft and specified that delivery was to be made on or before June 4, 1979, in Wilmington, Delaware, or such other location as might be mutually agreed upon in writing.[10] By the first contract (the "Ronair contract"),[11] Ronair purported to agree to sell the Aircraft to defendant Tekair, Ltd. ("Tekair") for a price of $4,980,000.[12] Tekair is a Swiss corporation with its principal place of business in Switzerland[13] and is under the domination and control of the same individuals who control Ronair.[14] The second contract[15] purported to be an agreement of sale of the Aircraft by Tekair to Jet Traders for a price of $6,000,000 ("the Tekair contract").[16]

The nature of these contracts and the facts surrounding their negotiation are hotly disputed. The parties, other than TAAG, contend that they were separate agreements, and on their faces, they appear to be entirely separate contracts of sale. On the other hand, TAAG alleges that on or about May 7, 1979, Ronair entered into an agreement with Tekair whereby it engaged Tekair to act as its exclusive agent for the sale of the Aircraft.[17] TAAG also contends that the Tekair contract was in fact an agreement by which Tekair ceded all or part of this agency to plaintiff Jet Traders.[18] Thus, TAAG claims that there was really only one contract, between Ronair and TAAG, and that Jet Traders and Tekair were merely intermediate brokers and agents for Ronair. TAAG alleges that Tekair negotiated directly with TAAG concerning the sale of the Aircraft as early as

4. D.I. 75, ¶ 8; D.I. 1, ¶¶ 6 & 7.

5. D.I. 75, ¶ 9 & Ex. A, Annex 7.

6. D.I. 75, ¶ 18 & Ex. A.

7. D.I. 17, ¶¶ 12 & 20, Ex. A, Art. 5.2 and Annex 3.

8. D.I. 75, ¶ 11.

9. D.I. 75, ¶ 4.

10. D.I. 75, ¶ 10, Ex. B, Art. 2A, Ex. C, Art. 2A.

11. D.I. 75, Ex. B.

12. D.I. 75, ¶ 10, Ex. B.

13. D.I. 75, ¶ 3.

14. D.I. 75, ¶ 49.

15. D.I. 75, Ex. C.

16. D.I. 75, ¶ 10, Ex. C.

17. D.I. 75, ¶ 15.

18. D.I. 75, ¶ 16.

January 1, 1979.[19] Finally, TAAG alleges that another unwritten contract exists between it and Ronair ("the oral contract") wherein Ronair, by its own conduct and through the conduct of its agents, contracted with TAAG to deliver the Aircraft and to assist in assuring that the modifications called for by the TAAG contract were carried out.[20]

The terms of the contract or contracts were never carried out by Ronair, Tekair and Jet Traders. The Aircraft was not delivered, nor tendered for delivery on June 25, 1979, nor on any date thereafter, and Ronair has retained title in it. TAAG subsequently delivered written notice to Jet Traders, terminating the contract and demanding a refund of the amount paid toward the purchase price together with consequential damages and accrued interest. Jet Traders has failed to return any money to TAAG whatsoever.[21]

TAAG also alleges that certain tortious actions were committed by Ronair, Tekair and Jet Traders. First, TAAG alleges that Ronair and Tekair, knowing of the TAAG contract "wrongfully, intentionally and maliciously interfered with the performance of said contract" by forcing Jet Traders to default on its obligations.[22] Although TAAG has failed to allege the means by which the interference took place, Jet Traders, in its complaint, alleges an apparently identical interference with the TAAG contract by Tekair and Ronair. These allegations state that Tekair and Ronair's actions included:

(a) inducing Jet Traders to enter into an agreement to purchase the Aircraft for $5,800,000.00 so as to discover the identity of Jet Traders' customer, when Ronair and Tekair did not intend to perform such a contract with Jet Traders,

(b) contacting the Transportes Aereos De Angolo of Luanda, Angola ("TAAG"), Jet Traders' customer for the Aircraft, in an attempt to sell the Aircraft directly to

TAAG and thereby circumvent the Angolan Contract of Jet Traders,

(c) increasing unilaterally the purchase price of the Aircraft to $6,000,000.00, with the knowledge that Jet Traders would be forced to accept such an increase so as to enable it to perform the Angolan Contract,

(d) demanding and receiving $850,000.00 from Jet Traders as a deposit on the Aircraft under the Contract when the defendants knew they were unable to and did not intend to perform the Contract,

(e) failing to assist Jet Traders in obtaining the avionics and alterations necessary to permit the Aircraft's re-sale to TAAG,

(f) wrongfully asserting that Jet Traders had breached the Contract by failing to accept delivery when such acceptance of delivery was not required under the Contract's terms, as agreed to by defendants in inducing Jet Traders to accept the $6,000,000.00 purchase price and $850,000.00 deposit provisions of the Contract,

(g) failing to perform the Contract or even placing themselves in the position of being able to perform the Contract, and

(h) removing the Aircraft from Wilmington, Delaware to outside the United States so as to frustrate Jet Traders' ability to obtain specific performance of the Contract.[23]

Second, TAAG alleges that all three parties fraudulently induced it to enter the contract or contracts and to pay $6,550,000 towards the purchase of the Aircraft. TAAG alleges that Ronair and Tekair individually and Ronair, Jet Traders and Tekair, collectively, intentionally failed to reveal, before May 11, 1979, facts which were, and which they knew to be, material to TAAG, with the intent of deceiving TAAG and inducing TAAG to enter into the contract for the purchase of the Aircraft. In particular, TAAG alleges that they inten-

19. D.I. 75, ¶ 34.

20. D.I. 75, ¶¶ 13, 21, 29, 31, 50(e), 58.

21. D.I. 75, ¶ 59.

22. D.I. 75, ¶¶ 28 & 29.

23. D.I. 31, ¶ 25.

tionally failed to reveal the fact that Ronair held title to the Aircraft and that the Aircraft was subject to a Chattel Mortgage held by a bank in Switzerland in the face amount of $4,720,000. TAAG also alleges that all three parties conspired together to defraud TAAG and never intended to transfer the Aircraft to TAAG.[24]

Consequently, TAAG, by way of its proposed complaint in intervention, asserts the following causes of action:

(1) a claim against Ronair based upon its alleged breach of the oral contract,

(2) a claim for conversion against Ronair on the ground that "since on or about June 26, 1979, Ronair has exercised dominion and control over the subject Aircraft in a manner that is inconsistent with T.A.A.G.'s interests in said property,"

(3) a claim against Ronair and Tekair for wrongful interference with the TAAG contract,

(4) a claim against Tekair for fraud,

(5) a claim against Ronair for fraud,

(6) a claim against Ronair, Tekair, and Jet Traders for acting in concert and conspiring together to defraud TAAG,

(7) a cross-claim against Jet Traders for breach of the TAAG contract,

(8) a cross-claim against Jet Traders for conversion based upon Jet Traders' alleged illegal retention of the funds paid to it by TAAG. TAAG seeks a judgment for monetary damages.

This action was originally filed on July 27, 1979. In the original complaint[25] Jet Traders, the plaintiff, named Tekair as defendant and alleged that Tekair had breached the Tekair contract. As relief, Jet Traders sought specific performance of the contract or, in the alternative, damages. In commencing the action, Jet Traders caused this Court to issue a Mesne Writ of Foreign Attachment to seize the Aircraft which was then located in Wilmington, Delaware. On August 6, 1979, Tekair entered a general appearance in the action and moved to quash that attachment. The Court granted the motion that same day.[26] On August 9, 1979, by leave of the Court Jet Traders filed an amended complaint.[27] The amended complaint added Ronair as a defendant and added a third count alleging that Ronair and Tekair had conspired to and did in fact defraud Jet Traders and illegally interfere with the TAAG contract. The means alleged in this count, which is practically identical to TAAG's claim of interference of contract against Ronair and Tekair, were quoted earlier. The amended complaint also added allegations to the effect that in August, 1979, Jet Traders was ready and able to carry out its obligations under the Tekair contract but that Tekair breached that agreement by failing to provide certain unspecified documentation required by the contract.

Both Ronair and Tekair answered the amended complaint[28] and alleged that Jet Traders was not ready and willing to perform the Tekair contract and that Tekair was at all times ready and able to deliver the Aircraft. They raised six affirmative defenses including: (1) failure to state a claim upon which relief can be granted, (2) refusal by Jet Traders to accept delivery of the aircraft, (3) breach of contract by Jet Traders, (4) waiver and estoppel by reason of Jet Traders' wrongful behavior, (5) unclean hands, and (6) failure to state a claim for specific performance. The defendants also asserted counterclaims against Jet Traders in which they alleged numerous instances including meetings which took place in Wilmington, Delaware, in which they were ready and willing to deliver the Aircraft but where Jet Traders failed to appear, failed to make adequate payment, or otherwise failed or refused to perform its contractual obligations. They contend that Jet Traders has breached the Tekair contract and that, therefore, they have the

24. D.I. 75, ¶¶ 34–41, 43–47, and 49–51.

25. D.I. 1.

26. D.I. 13.

27. D.I. 31.

28. D.I. 35 and 36.

contractual right to retain as liquidated damages a sum of $850,000 which Jet Traders paid on account to Tekair pursuant to the contract. They also seek damages against Jet Traders for the wrongful attachment of the Aircraft.

All pleadings were completed on September 24, 1979,[29] and discovery was underway when TAAG moved to intervene on May 27, 1980.[30]

As noted earlier, TAAG asserts three bases for intervention. First, it contends that the Court ought to allow a permissive intervention under Rule 24(b). Second, it contends that it has a right to intervene pursuant to Rule 24(a)(1) because the Convention on the International Recognition of Rights in Aircraft, T.I.A.S. no. 2847, 4 U.S.T. 1830 (1953), confers upon it an unconditional right to intervene. Finally, it contends that it has a right to intervene pursuant to Rule 24(a)(2) because the disposition of the action may as a practical matter impair or impede its ability to protect its contractual rights and its ability to be compensated adequately. The Court will consider these three contentions *seriatim.*

## II. *Permissive Intervention.*

Rule 24(b)(2) provides in relevant part:
  (b) PERMISSIVE INTERVENTION. Upon timely application anyone may be permitted to intervene in an action . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common.

  \*    \*    \*    \*    \*    \*

In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

■ It is clear that TAAG's claims have questions of law and fact in common with those involved in the principal action, and the Court is further convinced that TAAG's participation in this action would be desirable and would not unduly prejudice the

parties. However, the Court lacks the power to permit TAAG to intervene as a discretionary matter because TAAG has failed to show that this Court has jurisdiction to hear its claims. In order to intervene pursuant to Rule 24(b)(2), an intervenor must establish the existence of a jurisdictional basis for its claims independent of the jurisdiction that the Court has over the claims in the principal action. *Blake v. Pallan,* 554 F.2d 947, 955–57 (C.A.9, 1977); *Beach v. KDI Corp.,* 490 F.2d 1312, 1319–20 (C.A.3, 1974); *Babcock and Wilcox Co. v. Parsons Corp.,* 430 F.2d 531, 540 (C.A.8, 1970); *Finance Company of America v. Park Holding Corp.,* 60 F.R.D. 504, 506–507 (W.D.Pa. 1973); 3B Moore's Federal Practice ¶ 24.-18[3] (1980).

■ In this case, the sole basis for jurisdiction over the principal action is diversity of citizenship. 28 U.S.C. § 1332(a)(3). If TAAG, an alien, were to intervene as a plaintiff, there would be aliens on both sides of the action. With aliens, regardless of their nationality, on both sides of an action there would be no complete diversity between the parties and jurisdiction would be destroyed. *Field v. Volkswagenwerk AG,* 626 F.2d 293 (C.A.3, 1980); *Ex Parte Edelstein,* 30 F.2d 636 (C.A.2), *cert. denied,* 279 U.S. 851, 49 S.Ct. 347, 73 L.Ed. 994 (1929); *Hercules, Inc. v. Dynamic Export Corp.,* 71 F.R.D. 101 (S.D.N.Y.1976).

TAAG argues that diversity would not be destroyed by its intervention because the Court has a duty to realign the parties so as to allow TAAG to intervene on the side of Tekair and Ronair, apparently as plaintiffs against Jet Traders as defendant. TAAG contends that such a realignment would be proper because TAAG's interests are most closely aligned with those of Ronair and Tekair. In so arguing, TAAG relies upon a line of cases holding that a federal court sitting in diversity actions has the duty to assure that the parties before it are aligned according to their true interests and, if they are not, to realign them accordingly. *See*

---

**29.** D.I. 42.

**30.** D.I. 75.

*Indianapolis v. Chase National Bank*, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47 (1941). The situation presented in such cases, however, has invariably been one where realignment would destroy diversity. This Court has been unable to find a single case where parties were realigned to *create* diversity. Where courts have addressed this question in passing, they have indicated a belief that to do so would be improper. *See Baker v. National Boulevard Bank of Chicago*, 399 F.Supp. 1021, 1023, n.1 (N.D.Ill.1975); *cf. Irving Trust Co. v. Century Export & Import, S.A.*, 464 F.Supp. 1232 (S.D.N.Y.1979). In any event, it is clear that TAAG's interests do not coincide more closely with the defendants than with the plaintiff. TAAG does share with defendants the interest in proving that Jet Traders was responsible for its failure to deliver the Aircraft for the purpose of establishing its cause of action against Jet Traders for breach of contract. It also shares a substantial common interest with Jet Traders in proving that the defendants interfered with the TAAG contract. However, it also has many interests adverse to all three parties which it shares with none of those parties. For this reason, if the parties were realigned according to their real interests, TAAG would be the sole plaintiff. In such case, there would be no diversity of citizenship because aliens would be on both sides. The Court, therefore, concludes that it could not create the requisite diversity to allow Rule 24(b)(2) intervention by realigning the parties.

### III. *Intervention of Right Under Rule 24(a)(1).*

TAAG next contends that certain Articles of the Convention on the International Recognition of Rights in Aircraft, T.I.A.S. no. 2847, 4 U.S.T. 1830 (1953) ("the Treaty") confer upon it an unconditional right to intervene in this action and that therefore it is entitled to intervene as of right pursuant to Rule 24(a)(1).[31] The United States has ratified that Treaty and is a party to it.

**31.** If TAAG has an absolute right to intervene, it need not establish an independent source of jurisdiction because the Court would have ancillary jurisdiction over its claims. *CRI v. Watson*, 608 F.2d 1137 (C.A.8, 1979); *Babcock and*

■■■ However, even assuming that the Treaty would give a party to the Treaty, or a citizen of a party to the Treaty in TAAG's position, an absolute right to intervene, TAAG may not claim that right. By its express terms, the Treaty applies only as between "Contracting States"—*viz.*, signatory States which have ratified the Treaty or any other States which have formally adhered to the Treaty. Treaty, Articles XI(1), XIX and XXI, 4 U.S.T. 1830, 1839, 1841–42 (1980). Indeed, as a general principle of international and United States law, a treaty creates neither rights nor obligations in regards to a state which is not a party to that treaty (unless, of course, it evinces an intent to do so). Vienna Convention on the Law of Treaties, Art. 34, May 23, 1969, U.N.Conf.Doc.A/Conf. 39/27, 8 Int'l L.Mat. 679 (1969). *See also* Restatement (Second) of Foreign Relations Law of the United States, § 139 (1965). Angola is not a signatory state and has never formally adhered to the Treaty. Office of the Legal Advisor, Treaty Affairs Staff, Department of State, *Treaties in Force*, at 265 (1980). Consequently, because TAAG is a juridical entity of the Angolan government, it can claim no rights under the Treaty and cannot claim that the Treaty creates a statutory right to intervene in this action.

### IV. *Intervention of Right Pursuant to Rule 24(a)(2).*

TAAG has also asserted a right to intervene pursuant to Rule 24(a)(2). That Rule allows intervention as a matter of right:

upon timely application ... when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

*Wilcox Co. v. Parsons Corp., supra,* 430 F.2d at 540; *Pierson v. United States,* 71 F.R.D. 75, 81 (D.Del.1976); 3B Moore's Federal Practice ¶ 24.18[3].

Thus, the Rule sets out a four part test. *Blake v. Pallan*, 554 F.2d 947, 951 (C.A.9, 1977); *Commonwealth of Pennsylvania v. Rizzo*, 530 F.2d 501, 504 (C.A.3), *cert. denied*, 426 U.S. 921, 96 S.Ct. 2628, 49 L.Ed.2d 375 (1976); 3B Moore's Federal Practice ¶ 24.09–[1] (1980). (1) The intervention must be timely. *Commonwealth of Pennsylvania v. Rizzo, supra; Firebird Society of New Haven, Inc. v. New Haven Board of Fire Commissioners*, 66 F.R.D. 457 (D.Conn.), *aff'd*, 515 F.2d 504 (C.A.2), *cert. denied*, 423 U.S. 867, 96 S.Ct. 128, 46 L.Ed.2d 96 (1975). (2) The intervenor must assert some significant, legally protectable interest which relates to the transaction or the property which forms the subject matter of the main action. (3) The interest must be such that, as a practical matter, the disposition of the pending lawsuit may impair or impede the intervenor's ability to protect that interest. (4) The intervenor must show that the interest is not adequately represented by existing parties to the lawsuit. *N. R. D. C., Inc. v. U. S. Nuclear Regulatory Commission*, 578 F.2d 1341, 1343 (C.A.10, 1978); *Reedsburg Bank v. Apollo*, 508 F.2d 995 (C.A.7, 1975); *Martin v. Travelers Indemnity Co.*, 450 F.2d 542, 553–54 (C.A.5, 1971); *Pierson v. United States*, 71 F.R.D. 75, 77–78 (D.Del.1976); *Vazman, S. A. v. Fidelity International Bank*, 418 F.Supp. 1084, 1085 (S.D.N.Y. 1976); *United States v. Reserve Mining Co.*, 56 F.R.D. 408, 411 (D.Minn.1972).

■ There is no doubt that TAAG meets the timeliness, interest, and inadequacy of representation requirements. First, although TAAG has presented no good reason for the eight month delay between the completion of the pleadings and its motion to intervene, it is clear that where discovery has not been completed, there have been no significant decisions on the merits considered or decided, and the parties could not be prejudiced by that delay, the motion must be considered timely. *Commonwealth of Pennsylvania v. Rizzo, supra.* Second, it is also clear that TAAG meets the interest test for Rule 24(a)(2) whether a narrow or broad view of that requirement is adopted. TAAG has a direct, substantial and legally protectable interest in the transactions which form the subject matter of this action—*viz.*, the contracts, negotiations and events involved in the aborted sale of the Aircraft. *See Donaldson v. United States*, 400 U.S. 517, 530–31, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971); *N. R. D. C., Inc. v. U. S. Nuclear Regulatory Commission, supra; Blake v. Pallan, supra; Old Colony Trust Co. v. Penrose Industries Corp.*, 387 F.2d 939 (C.A.3), *cert. denied*, 392 U.S. 927, 88 S.Ct. 2283, 20 L.Ed.2d 1385 (1968); *Nuesse v. Camp*, 385 F.2d 694 (C.A.D.C.1967); *Florida Power Corp. v. Granlund*, 78 F.R.D. 441 (M.D.Fla.1978); *Liberty Mutual Insurance Co. v. Pacific Indemnity Co.*, 76 F.R.D. 656 (W.D.Pa.1977); *In re Penn Central Commercial Paper Litigation*, 62 F.R.D. 341 (S.D.N.Y.1974), *aff'd per curiam*, 515 F.2d 505 (C.A.2, 1975); *United States v. Reserve Mining Co., supra.* Finally, TAAG's interests will not be adequately represented by the existing parties. Many of TAAG's claims are adverse to all parties presently involved in the action. Furthermore, TAAG has made serious charges that all parties have acted together and conspired to defraud TAAG in the course of the transactions which make up the subject matter of the action. *Atlantis Development Corp. v. United States*, 379 F.2d 818, 825 (C.A.5, 1967); 3B Moore's Federal Practice ¶ 24.-08[2]; *see Pierson v. United States, supra; Peterson v. United States*, 41 F.R.D. 131 (D.Minn.1966).

The closer question is whether TAAG's ability to protect its interests may, as a practical matter, be impaired or impeded by the disposition of this action. The question of impairment is, of course, linked to the question of whether the proposed intervenor has an interest in the litigation. In determining whether the impairment test has been met, the Court must, upon consideration of the relevant facts and issues of each case, identify each specific interest which may be impaired and then consider the possibility and type of impairment. *See N. R. D. C., Inc. v. U. S. Nuclear Regulatory Commission, supra*, 578 F.2d at 1345.

Impairment need only be shown as a practical matter. This "practical impairment test" was adopted in the 1966 Amendments to the Federal Rules in order to expand the right of intervention and overcome the overly restrictive view towards intervention adopted by the courts under the previous version of the Rule. *See United States v. City of Jackson, Mississippi*, 519 F.2d 1147, 1150 (C.A.5, 1975); *Atlantis Development Corp. v. United States, supra*; Advisory Committee Note to Rule 24, 39 F.R.D. 69, 109–111 (1966); 3B Moore's Federal Practice ¶ 24.09 (1980). The test eschews the approach of categorizing or compartmentalizing the instances in which intervention should be granted and requires, instead, that the court carefully consider the facts and issues in each individual case and determine the practical effects. Not surprisingly, this very flexible test has spawned a brood of confused and seemingly inconsistent decisions. Noting this, in *United States v. City of Jackson, Mississippi, supra*, 519 F.2d at 1150–51, the court stated:

As is often the case, gains in flexibility as a result of the new Rule have been offset to some extent by judicial uncertainty and inconsistency; the issue of "practical impairment" is necessarily one of degree and cannot be solved by reference to Rules 19 or 23. It requires instead a consideration of the competing interests of the plaintiff and defendant in conducting and concluding their lawsuit without undue complication and of the public in the speedy and economical resolution of legal controversies.

Nevertheless, some general principles and trends can be gleaned from the extensive body of law applying the practical impairment test of Rule 24(a)(2). The Court will now examine the relevant precedents for guidance in this instance.

Impairment has been readily found and intervention freely granted in cases seeking injunctive or declaratory relief where the grant of the relief sought would have broad social or economic ramifications. *See N.R.D.C., Inc. v. U. S. Nuclear Regulatory Commission, supra*; *E.E.O.C. v. A.T. & T. Co.*, 506 F.2d 735 (C.A.3, 1974); *United States v.*

*Reserve Mining Co., supra*. In cases such as this one, where the intervenor seeks only damages, a more careful scrutiny is required.

█ Intervention of right has been granted in some actions for damages where the *stare decisis* effect of the first action would be its sole effect upon the proposed intervenor's ability to protect its interests. The practical impairment test is not met, however, in every case where there might be some possibility that the decision in that action would have an effect by virtue of *stare decisis* on a subsequent suit that might be brought by the proposed intervenor. Certain additional exceptional circumstances must be present which would give the decision in the first action compelling persuasive force in the second. For example, a *stare decisis* effect has been found to constitute sufficient impairment to meet the Rule 24(a)(2) impairment test where, if he were not allowed to intervene, the proposed intervenor might be forced to present identical issues of law and fact to the same court in a later action. *CRI, Inc. v. Watson*, 608 F.2d 1137 (C.A.8, 1979); *Martin v. Travelers Indemnity Company, supra*; *Florida Power Corp. v. Granlund, supra*. However, where the proposed intervenor would be likely to present its case to a different court in a parallel system, such as a state court, in a later action, or where the identical issues of law and fact are not controlling, the effect of *stare decisis* will not be enough to support intervention under Rule 24(a)(2). *Blake v. Pallan, supra*, 554 F.2d at 954; *Babcock and Wilcox Co. v. Parsons Corp.*, 430 F.2d 531 (C.A.8, 1970); *TPI, Corp. v. Merchandise Mart of South Carolina, Inc.*, 61 F.R.D. 684 (D.S.C.1974). *Stare decisis* has also been found to pose a sufficient degree of impairment where there is presented to the court a question of first impression on a controlling issue of law. *Atlantis Development Corp. v. United States, supra*.

█ In some limited situations, the fact that the first action might deplete specific, identifiable funds before the court so as to

make it unlikely that the proposed intervenor could be fully compensated has been considered sufficient impairment of interest to meet the Rule 24(a)(2) standard. However, such cases are limited to situations where a discrete, distinguishable fund exists and where the intervenor has some presently, legally enforceable interest in that fund or where his claim against that fund arises from the same factual basis as does the claim in the original action. *See Calvert Fire Insurance Co. v. Environs Development Corp.*, 601 F.2d 851 (C.A.5, 1979); *Reedsburg Bank v. Apollo, supra; Vazman, S.A. v. Fidelity International Bank*, 418 F.Supp. 1084 (S.D.N.Y.1976); *Hartford Accident and Indemnity Company v. Crider*, 58 F.R.D. 15 (N.D.Ill.1973); *American Jerex Co. v. Universal Aluminum Extrusions, Inc.*, 340 F.Supp. 524 (E.D.N.Y.1972); *Abrams v. Occidental Petroleum Corp.*, 44 F.R.D. 543 (S.D.N.Y.1968). However, the mere fact that the first action may decrease the ability of the intervenor to collect a potential judgment against the defendant is insufficient to be considered a substantial impairment of an interest for the purposes of Rule 24(a)(2). This is so because if

> [l]ogically extended ... [such a rule] would give the right to intervene in ... [an] action ... to all persons with potential claims against any party in the ... action ... on the ground that the outcome of the ... suit may increase or decrease the collectibility of their claims. This would abandon completely the general notion that a plaintiff may control his action and the FRCP Rule 24(a)(2) requirement that an unrepresented petitioner must show an interest in the underlying transaction to support an absolute right of intervention.

*Hawaii-Pacific Venture Capital Corp. v. Rothbard*, 564 F.2d 1343 (C.A.9, 1977). *See also Old Colony Trust Co. v. Penrose Industries Corp., supra; Liberty Mutual Insurance Co. v. Pacific Indemnity Co.*, 76 F.R.D. 656 (W.D.Pa.1977); *In re Penn Central Commercial Paper Litigation, supra.*

Finally, impairment has also been found in a case where without intervention it might have been impossible for the proposed intervenor to obtain in a later action *in personam* jurisdiction over an alien which was a party to the action in which intervention was sought. *Diaz v. Southern Drilling Corp.*, 427 F.2d 1118 (C.A.5), *cert. denied*, 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115 (1970).

■ With these precedents in mind, the Court now turns to the facts of this case. TAAG has suggested five ways in which the resolution of this action in its absence might impair its ability to protect its interests relating to the Aircraft. The Court has concluded that in none of the suggested cases will an interest which meets the Rule 24(a)(2) requirement be sufficiently impaired to meet the practical impairment test.

First, TAAG contends that if this action is decided in TAAG's absence, the *stare decisis* effect of the decision could significantly impair its ability to establish joint liability on the parts of the parties to this action. In this regard, TAAG argues as follows:

> [I]f TAAG's application to intervene in the instant suit is denied, then the issue that will be decided is *whether it is the plaintiff or one or another of the defendants* that is liable for failing either to deliver or to accept delivery of the Aircraft.

> TAAG takes the position that the question of liability is not an "either-or" proposition. It is not simply a question of whether the plaintiff *or* one or more of the defendants are liable for breach of contract. It is also a question of whether the existing parties may have conspired and/or acted *together* to defraud the instant applicant and to fail deliberately to perform on their respective contractual obligations.

> ... [TAAG] should be given the opportunity to demonstrate that (1) the existing parties have been and may still be collectively involved in a scheme to defraud; and (2) that that involvement bars them from recovering on their respective claims.

Unless this question is both raised and decided in the context of the present action, TAAG may well find itself in the position of having to convince the Court that the decision it rendered in this case was and is an incorrect one. In other words, TAAG will be in the rather unenviable position of having to argue that the ruling in *Jet Traders Investment Corp. v. Tekair Ltd. and Ronair Inc.* should not be given precedential weight or accorded *stare decisis* effect. In practical terms, it will have to persuade the Court to discard the "either/or" approach to liability and, on the basis of facts that are virtually identical to the facts that will have been established in the instant proceeding, to adopt an approach that focuses on joint or collective liability.[32]

The Court disagrees. The *stare decisis* effect of this action upon any possible future actions brought by TAAG against the three parties to this action would be minimal. TAAG has not been able to point to a single controlling issue of law that would be common to the two actions and could be considered a question of first impression. Second, many different facts and contentions would be involved in TAAG's future action or actions. This also makes it unlikely that the present action could have any significant *stare decisis* effect. Finally, it is clear that the federal courts would have no diversity jurisdiction over TAAG's action and that TAAG would therefore have to prosecute its suit in the state courts or the courts of foreign nations. Any decision rendered by this Court here on an issue of state law that might be involved in another action brought by TAAG in a parallel state or foreign court would not carry the *stare decisis* weight that would practically foreclose TAAG's ability to obtain a favorable contrary ruling in a parallel court. *Blake v. Pallan, supra,* 554 F.2d at 954.

It is also clear that even if TAAG is not granted intervention in this action, it will still have available to it at least one forum in which it can sue all three parties to this action and thus seek to establish joint liability. Thus, TAAG cannot contend that not granting intervention in this action will deny it as a practical matter the only forum where jurisdiction over all three parties could be obtained and where it could effectively press its collective responsibility argument.

This is so because it is highly likely that TAAG would be able to obtain jurisdiction over all three parties in a suit in the Delaware state courts. Personal jurisdiction over Ronair could readily be obtained because it is a Delaware corporation. Jurisdiction over Tekair and Jet Traders could also probably be obtained pursuant to Delaware's recently enacted Long Arm Statute, 10 *Del.C.* § 3104. That statute allows the Delaware courts to assert jurisdiction over non-residents who transact business in the state or who contract to supply things in the state, when the cause of action asserted arises from such acts. 10 *Del.C.* § 3104(c)(1) & (2), & (j). The Delaware statute is derived from the Illinois Long Arm Statute. The Illinois courts have found jurisdiction under its similar statute over non-residents in contract actions where the relevant contract called for performance in the state and where some negotiation or other action relating to the contract took place within the state. *United Air Lines, Inc. v. Conductron Corp.,* 69 Ill.App.3d 847, 26 Ill.Dec. 344, 387 N.E.2d 1272 (1979); *International Merchandising Associates, Inc. v. Lighting Systems, Inc.,* 64 Ill.App.3d 346, 20 Ill.Dec. 838, 380 N.E.2d 1047 (1978); *Ward v. Formex, Inc.,* 27 Ill.App.3d 22, 325 N.E.2d 812 (1975). The Delaware courts would probably find these decisions persuasive. *Wilmington Supply Company v. Worth Plumbing & Heating, Inc.,* 505 F.Supp. 777 (D.Del.1980). In the present case, both the TAAG and the Tekair contracts call for performance in Wilmington, Delaware. In addition, on numerous occasions, representatives of both Tekair and Jet Traders came to Delaware for the purpose of fulfilling certain requirements of the contracts, for certain negotiations, and for the purpose of attempting to

**32.** D.I. 103 at 18–19.

close the contracts.[33] The Court, therefore, concludes that the Delaware courts would find that they would have jurisdiction over Jet Traders, Tekair and Ronair for the purpose of hearing the claims against them which TAAG attempts to assert by way of intervention here. Therefore, denial of TAAG's motion to intervene would not deny TAAG an adequate forum altogether and thus impair its ability to protect its interests.

TAAG further contends that its ability to protect its interests would be impaired by the *stare decisis* effect of a decision which may be reached by this Court in this action if this Court should absolve Jet Traders of all responsibility for failure to accept delivery of the Aircraft. In such case, TAAG argues, a basis will have been laid for arguing that Jet Traders' liability to TAAG for the breach of the TAAG contract should be limited pursuant to Article 8.3 of that contract. That Article provides:

> If the Seller is unable to deliver the Aircraft on the relevant Delivery Date because of repairable damage to the Aircraft or of any matter outside the control of the Seller (which shall be deemed to include labour dispute strike or lockout of employees of the Seller or unserviceability of the Aircraft in question), then the Seller shall give the Buyer immediate notice of the delay in writing and shall deliver the Aircraft as soon as practicable thereafter save that if the Aircraft shall not have been delivered within sixty (60) days following the Delivery Date the Buyer may terminate this Agreement by written notice to the Seller. In the event of such termination neither party shall have any liability to the other under this Agreement save that the Seller shall refund to the Buyer any monies then paid by the Buyer to the Seller hereunder in respect to the Aircraft so affected.

The Court disagrees for three reasons. First, a finding that Jet Traders was without fault would support TAAG's third cause of action against Tekair and Ronair seeking damages for wrongful and intentional interference with the TAAG contract and might aid TAAG in proving its allegations relating to fraud and conversion. Second, Article 8.3 could not reasonably be interpreted to allow limitation of liability even in the event that Jet Traders was wholly absolved of responsibility for failure to accept delivery and thus obtain title. By its terms Article 8.3 does not refer to the inability of the Seller (Jet Traders) to deliver the Aircraft because the Seller has failed to obtain title but refers only to cases in which the Aircraft becomes physically unavailable or fails to conform physically to the contract specifications. This conclusion is made even clearer by Article 2.5 wherein Jet Traders represented and warranted that "[a]t the relevant Delivery Date the Seller shall be capable of conferring and shall confer upon the Buyer good legal and beneficial title to and ownership of the Aircraft." Third, the suggested impairment could only occur because of the possible *stare decisis* effect which might be given to any decision reached by this Court. The Court has already concluded that the *stare decisis* effects of decisions reached by this Court upon TAAG's action in a state or foreign court would be so attenuated that TAAG's ability to protect its interests would not be substantially impaired.

For this same reason, the Court also concludes that any decision reached in this action relating to Jet Traders' claim against Ronair and Tekair's wrongful interference of the TAAG contract would not impair TAAG's ability to press a virtually identical claim against them in a later action.

Finally, TAAG argues that if it is not allowed to intervene in this action it may be unable to obtain full compensation from Jet Traders on TAAG's breach of contract claim. TAAG contends that if Ronair and Tekair prevail in this action, the damages which they obtain may reduce Jet Traders total assets to a figure below the amount claimed by TAAG as damages. Although this contention seems plausible, it does not afford TAAG a basis for claiming Rule 24(a)(2) intervention here. There is no dis-

**33.** *See* D.I. 59, ¶ 3; D.I. 35, Counterclaim.

crete, identifiable fund in the Court's jurisdiction and TAAG claims no presently enforceable legal interest in any such specific funds. In short, TAAG is in the same position as any party having a potential claim against Jet Traders whose ability to collect damages from Jet Traders may be compromised by the fact that damages obtained by Tekair and Ronair will reduce Jet Traders' total assets. This general interest in collectability is not even the type of interest which creates a right to intervene under Rule 24(a)(2). *Hawaii-Pacific Venture Capital Corp. v. Rothbard, supra; Old Colony Trust Co. v. Penrose Industries Corp., supra; Liberty Mutual Insurance Co. v. Pacific Indemnity Co., supra; In re Penn Central Commercial Paper Litigation, supra.*

Therefore, the Court concludes that TAAG has failed to show that the disposition of this action may impair or impede its ability to protect any specific interest cognizable under Rule 24(a)(2) and intervention may not be granted under that Rule.

Moreover, because the Court has already determined that it may not grant TAAG's motion to intervene on any other ground under Rule 24, TAAG's motion to intervene will be denied *in toto*.